# FANNIE SONNENFELD, Appellant, v. ROSEN-THAL-SLOAN MILLINERY COMPANY.

### Division Two, March 21, 1912.

1. **PLEADING: Petition: Estoppel.** When a petition states such improper acts upon the part of defendant as will defer the running of the Statute of Limitations in his favor, a further plea that he is estopped to plead the statute is useless.

2. **LIMITATIONS: Deferred: "Improper Act;" Sec. 1905, R. S. 1909.** The plaintiff's petition alleges, that the defendant corporation wrongfully got possession of its note payable to plaintiff and refused to allow plaintiff to see it; that the president of the corporation was plaintiff's brother, who convinced plaintiff that the note was signed by him instead of by his corporation; that plaintiff, thus deluded, sued her brother upon the note in 1902, in good time; and, finally, that while defendant corporation knew of the pendency of plaintiff's suit against her brother as maker of the note, it used all means to prevent her from learning the truth about the note until after the Statute of Limitations had run. *Held*, that the petition stated such improper acts on the part of defendant corporation as would defer the running of the Statute of Limitations in accordance with Sec. 1905, R. S. 1909.

Appeal from St. Louis City Circuit Court.—*Hon. M. G. Reynolds,* Judge.

REVERSED AND REMANDED.

*David Goldsmith* for appellant.

(1) The fact alleged in the petition of the plaintiff, that the defendant had orally agreed not to plead the Statute of Limitations, and that plaintiff had relied thereon, is sufficient, as matter of estoppel at common law, to prevent the defendant from invoking that statute. Bridges v. Stephens, 132 Mo. 524; Asphalt Co. v. Transit Co., 102 Mo. App. 468; Monroe v. Herrington, 110 Mo. App. 515; Barcroft v. Davis, 91 N. C. 363; Joyner v. Massey, 97 N. C. 148; Cecil v. Henderson, 121 N. C. 247; Holman v. Omaha, 117 Ia. 268;

Schroeder v. Young, 161 U. S. 334; Davis v. Dyer, 56 N. H. 143; Renackowsky v. Water Commissioners, 122 Mich. 613; Armstrong v. Levan, 109 Pa. St. 177; Dry Goods Co. v. Goss, 65 Mo. App. 63; Railroad v. Com. Co., 71 Mo. App. 303. (2) The facts pleaded in the petition are sufficient to bring the case within the statutory provision of Sec. 4290, R. S. 1899 (Sec. 1905, R. S. 1909), and thus preclude the plaintiff from relying on the Statute of Limitations. Nelson v. Beveridge, 21 Mo. 22; Arnold v. Scott, 2 Mo. 14; Foley v. Jones, 52 Mo. 64; Wells v. Halpin, 59 Mo. 92; Hoffman v. Parry, 22 Mo. App. 20; Hamilton v. Wright, 87 S. W. 1093; Speakman v. Railroad, 114 Ky. 264; Bank v. Distilling Co., 152 Fed. 248; Reynolds' Admrs. v. Gawthrop's Heirs, 37 W. Va. 7; Vanbibber v. Bierner, 6 W. Va. 179.


*Albert Arnstein* and *Judson & Green* for respondent.

(1) An essential element of estoppel is that the party invoking it relied upon the conduct or representations of the other, and had been induced thereby to act or refrain from acting, and that he will be substantially injured if the other party is allowed to repudiate his action. 11 Am. & Eng. Ency. Law, 436, and authorities under note 1; Spurlock v. Sproule, 72 Mo. 573; Monks v. Beldon, 80 Mo. 639; Hequerbourg v. Edwards, 155 Mo. 514. The petition shows that plaintiff did not rely upon the representation set forth therein, that defendant would not plead the Statute of Limitations. (2) The running of the Statute of Limitations is not arrested, where a person is ignorant of his cause of action, but had the means of discovering it. Callan v. Callan, 175 Mo. 346; Reiss v. Clarenbach, 61 Mo. 310; Shelby County v. Bragg, 135 Mo. 291; State ex rel. v. Yates, 231 Mo. 276; Springer v. Hardy, 4 Mo. 573; Clapp v. Leavens, 164 Fed. 318. It follows

Sonnenfeld v. Millinery Co.

that the exceptions in the limitation law were never enacted to relieve a person from its operation, who at one time fully knew his cause of action, but subsequently forgot it. Ragland v. Owen, 84 Va. 237; Battle v. Crawford, 68 Mo. 280; Mereness v. Bank, 83 N. W. (Ia.), 711; Myers v. Cronk, 10 N. Y. S. App. 125; Railroad v. Mayo, 65 Me. 566; Piper v. Hoard, 107 N. Y. 67; Manly v. Bewicke, 3 K. & J. 342; Plank v. Humphries, 66 S. E. (W. Va.), 94. Plaintiff's petition admits that in July, 1894, when she received the note, she knew that the I. B. Rosenthal Millinery Company was the maker; she knew in November, 1894, that defendant paid her the interest thereon, and admits that she had the note in her possession continuously until 1896, two years thereafter. (3) Section 1905, Revised Statutes 1909, refers only to the "improper acts" of a defendant by which service of process or some other step necessary to the comencement of a suit and obtaining jurisdiction of the person or subject-matter was prevented. Shelby County v. Bragg, 136 Mo. 291; Burrus v. Cook, 215 Mo. 496; State ex rel. v. Yates, 231 Mo. 276; Chapman v. Hudson, 46 Ark. 489; Graham v. Staunton, 177 Mass. 321; Arnold v. Scott, 2 Mo. 14. The possession of the note was not necessary for the "commencement of the action;" it was but the evidence of the contract. (4) Applying the doctrine of *ejusdem generis* in construing Sec. 1905, R. S. 1909, makes clear the meaning of the words "improper act." The improper act which will prevent the commencement of an action must be similar to that of absconding or concealing himself by the debtor, such as concealing the specific property sought to be recovered; this would prevent the commencement of the action. State ex rel. v. Tennis, 79 Mo. App. 12; Shelby County v. Bragg, 135 Mo. 291. (5) As the cause of action accrued in 1894 at which time the plaintiff's alleged disability to sue did not exist, the running of the statute was not arrested

by any disabliity subsequently arising. R. S. 1909, sec. 1904; Wood on Limitations (3 Ed.), sec. 6; McDonald v. Hovey, 110 U. S. 619; Burr v. Williams, 20 Ark. 171; Denton v. Brownlee Co., 24 Ark. 557; Richardson v. Cogswell, 47 Ark. 170.

ROY, C.—This suit was instituted July 13, 1905, in the circuit court of the city of St. Louis and comes here on plaintiff's appeal from a judgment sustaining a demurrer to the third amended petition which is as follows:

"Plaintiff by leave of court files this her third amended petition and for cause of action states, that the defendant is a corporation duly organized under and by virtue of the laws of the State of Missouri.

"That on July 10, 1894, I. B. Rosenthal Millinery Company, a corporation duly organized under the laws of the State of Missouri, executed and delivered to plaintiff its negotiable promissory note, whereby said company promised to pay to the order of plaintiff, for value received, on demand, the sum of ten thousand, four hundred and seventy and 40-100 dollars with interest from date at the rate of six (6 per cent) per cent per annum.

"That on November 10, 1894, the said I. B. Rosenthal Millinery Company paid to plaintiff all interest due on said note.

"That on the 1st day of January, 1900, the corporation name of the I. B. Rosenthal Millinery Company was changed and the name the Rosenthal-Sloan Millinery Company was adopted, and that the Rosenthal-Sloan Millinery Company, the defendant herein, is the same corporation which was formerly known as I. B. Rosenthal Millinery Company.

"The plaintiff further states that she is unable to file said note with her petition because of the fact that the defendant, through its officers, agents and servants, in 1896, obtained possession of said note

wrongfully, fraudulently, without paying any consid-
eration therefor, and without the knowledge or con-
sent of plaintiff. That upon direction of defendant,
said note was abstracted from a safe-deposit box
where it had been placed by plaintiff, by one of the
agents of defendant, and by said agent delivered to
defendant, and defendant has since said time wrong-
fully retained possession of said note.

"Plaintiff states that during the years from 1896
to 1901 inclusive, she at various times and occasions
discussed with the president of the defendant the pay-
ment of said note; that said officer of defendant fre-
quently stated to plaintiff that it was not convenient
to pay said note, assured her most earnestly that she
was entirely safe and would be paid, and further
stated to plaintiff that even if said note was not paid
within ten years, that still it would be a good note,
because the Statutes of Limitations would never be
pleaded against said note as a bar to same, and plain-
tiff did not sue on said note because of said state-
ments, until as hereinafter stated.

"Plaintiff further states that the president of
defendant company, during all of the years above
mentioned, was I. B. Rosenthal; that the said I. B.
Rosenthal is the brother of plaintiff; that during the
conversation as aforesaid which she had with the
president of defendant, her brother, I. B. Rosenthal,
with reference to said note, the payment thereof and
the Statute of Limitations, that the president of de-
fendant, her brother, with the intention of deceiving
and defrauding plaintiff, and causing her to lose her
legal rights against the defendant with reference to
said note, the said president of the defendant always
referred to said note as "my note," and the said pres-
ident was so earnest in his request to plaintiff at the
various times that they discussed said note, that the
plaintiff, his sister, should not proceed against her
brother on "his note," that the president of defendant

finally succeeded in causing plaintiff to believe that it was the note of her brother, I. B. Rosenthal, and not the note of I. B. Rosenthal Millinery Company, this defendant.

"That plaintiff and her brother, I. B. Rosenthal, during the years above mentioned showed all the love and affection due from a brother and sister towards each other, and plaintiff relied implicitly upon the statements made to her by her brother, I. B. Rosenthal, because of her love for him and her confidence in him.

"Plaintiff further states that during the fall of 1901 she went to the establishment of defendant and made a peremptory demand for the payment of said note of her brother, I. B. Rosenthal, being under the impression from the many false statements made by her brother to her, that her brother I. B. Rosenthal was the maker of said note. That the said president of defendant, acting for and on behalf of defendant, had deliberately, intentionally and falsely misstated the fact as to who was the maker of said note in order to defraud his sister, and in order to protect his corporation, this defendant.

"That at the time of said demand the said I. B. Rosenthal, the president of defendant, refused to pay, and the plaintiff, intending to bring suit on said note, went to the safe-deposit box for said note and then discovered that the note was not in said box where it had been placed by her. That plaintiff ascertained at that time that defendant had possession of said note and had been in possession of same for several years, and plaintiff made demand on defendant that the same be delivered to her, which demand was refused by defendant, and then plaintiff asked of defendant that she be allowed to see said note and this request was refused by defendant. The defendant finally stated that it did not have said note, and refused to tell where said note could be found, and plain-

tiff asked all of the agents and business associates of defendant whom she believed had knowledge of the whereabouts of said note, but none of them gave her any information, though all of said parties knew where said note was, and one of the parties, a business associate of defendant, to whom she applied for information, had said note in his possession at this time and was holding same in order to protect defendant from plaintiff.

"That being unable to locate said note and get possession of same or even to see it, the same being in possession of defendant, or its agents, the plaintiff in September, 1902, instituted suit on said note, and that suit was against her brother, I. B. Rosenthal, because her brother had frequently stated it was his individual note, and not the note of defendant, and plaintiff believed that statement of her brother.

"That defendant intended to defraud plaintiff by taking possession of said note and placing it where the plaintiff could not find it or see said note. That after said suit had been instituted by plaintiff on said note of ($10,470.40) ten thousand four hundred and seventy dollars and forty cents, against I. B. Rosenthal, the defendant fraudulently and intentionally concealed from plaintiff for more than two years the fact as to the maker of said note, while said suit was pending in court against said I. B. Rosenthal, and defendant only permitted plaintiff to know the truth with reference to the maker of said note in March, 1905, after said note, from its face, was barred by the Statute of Limitations.

"The defendant knew that its president had fraudulently deceived plaintiff as to who was the maker of said note, and knew that its president by false statements had caused her to sue the wrong party, and defendant took fraudulent advantage of plaintiff by closely guarding said note from her, and defendant knew that its president was protecting it

from being sued by causing plaintiff to sue him and by defending said suit, and knew that its president was defending in court, in its behalf, the suit which had been instituted on said note against him as an individual.

"That during the time from September, 1902, to March, 1905, while the president of defendant was contesting in the courts with plaintiff the suit which she had brought against him, the defendant, the real maker of said note, had said note in its possession or under its control, and refused to let plaintiff see said note, or to give any information with reference to it, and defendant used all possible means to prevent plaintiff from learning the truth about said note, and by its action the defendant intended to defraud plaintiff of her rights with reference to said note, and encouraged its president to make defense in court against the suit which plaintiff had instituted against him on said note. That the president of defendant, by false statements, created a condition with reference to said note to the great injury of plaintiff, and the defendant knowingly accepted the benefits which accrued to it by reason of said false statements of its president.

"That defendant knew that its president was making false and fraudulent statements with reference to said note; and defendant encouraged him in the making of such false statements, and the defendant received and accepted all of the benefits accruing to it because of such false and fraudulent statements.

"Plaintiff further states that no part of the principal of said note has ever been paid, and interest paid only to November 10, 1894, and that the whole thereof remains due, together with interest thereon from November 10, 1894.

"Therefore plaintiff prays judgment against the defendant for the sum of ten thousand, four hundred and seventy and 40-100 dollars with interest at the

rate of six (6 per cent) per cent per annum from November 10, 1894, and for her costs."

I.  We think that so far as the petition pleads an estoppel, it furnishes the answer thereto.  It is useless to say that plaintiff was lulled into a sense of security by the promises of defendant not to plead the Statute of Limitations, for the petition states that plaintiff did bring suit within the time allowed for bringing the suit.

II.  On the other branch of the case we think the petition states a good reason why the Statute of Limitation is not available to the defendant.

It appears from the petition that defendant wrongfully got possession of the note and withheld it from plaintiff and refused to allow plaintiff to see it.  Plaintiff then thought that the maker of the note was I. B. Rosenthal.  She brought suit on the note within the statutory period against I. B. Rosenthal, who was the president of the defendant.  The petition states that defendant knew of the pendency of that suit from September, 1902, to March, 1905, and during that time refused to let plaintiff see it, and used all possible means to prevent her from learning the truth about it.

Revised Statutes 1909, section 1905, says: "If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such an action shall have ceased to be so prevented."

When plaintiff instituted her suit against I. B. Rosenthal in September, 1902, she thought he was the maker.  It makes no difference that she once knew who the maker was and had forgotten or been misled about it.  She had a right to the possession of the

note. The defendant knew the plaintiff was suing the wrong party.

It is true that the defendant was not bound under the law to furnish the plaintiff information, but it was bound to give her up the note which belonged to her, and which had on its face all the information she needed. The questions arising under section 1889 with reference to actions for relief on the ground of fraud should not be confused with the question here under discussion. When defendant knew that plaintiff was laboring under a mistake as to who was the maker of the note, whether that mistake arose from forgetfulness or otherwise, its refusal to surrender the note or to let her see it was *an improper act,* which prevented the bringing of the suit.

In Battle v. Crawford, 68 Mo. 280, it was held that the false and fraudulent representation did not prevent the bringing of the suit. But in this case the act of the defendant was improper and it did prevent the bringing of the suit.

The judgment is reversed and the cause remanded. *Blair, C.,* concurs.


PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.