ANTON SCHRABAUER, (CLAIMANT), RESPONDENT, v. SCHNEIDER ENGRAVING PRODUCT, INC., (EMPLOYER), APPELLANT, AND UNITED STATES FIDELITY & GUARANTY COMPANY (INSURER), DEFENDANT.*—25 S. W. (2d) 529.

St. Louis Court of Appeals.   Opinion filed March 11, 1930.

*Corpus Juris-Cyc. References: Fraud, 26CJ, section 1, p. 1059, n. 2; section 14, p. 1071, n. 17; Limitations of Actions, 37CJ, section 51, p. 732, n. 40; section 153, p. 810, n. 8; section 368, p. 984, n. 5; Workmen's Compensation Acts, —CJ, section 103, p. 106, n. 43, 45; section 115, p. 116, n. 47.

*Carter, Jones & Turney* and *George A. McNulty* for appellant.

*Douglas H. Jones* for respondent.

BENNICK, C.—This is a proceeding under the Workmen's Compensation Act, growing out of an accident which occurred on August 3, 1927, in the plant of the employer, Schneider Engraving Product, Inc., at 407 South Broadway, in the city of St. Louis, when a wrench, weighing three or four pounds, slipped out of the claimant's hand and fell down upon his left foot, fracturing the metacarpal bone of the second toe.

The claimant testified that he felt a stinging sensation in his foot at the time, and that he "hopped around a little," but thinking he was not seriously hurt, he said nothing to any one about the accident, and continued on with his work. Some two weeks later, however, he commenced to have pain in his foot, and swelling appeared in the region where the wrench had struck, whereupon, knowing nothing of compensation, he reported the matter to Albert Snider, his foreman, who took the position that the claimant had not been hurt in the shop, but that instead he was suffering from rheumatism. In fact the claimant received treatment for a rheumatic condition at the hands of his family physician, and it was not until the latter part of the following November that he learned of the existence of the fracture, when he called upon Dr. Peden, who took an X-ray picture of the injured region.

On February 8, 1928, the employer reported the accident to the commission, and on February 10th the formal claim for compensation was filed. Thereafter the employer, and its insurer, United States Fidelity & Guaranty Company, filed their answer, denying that the claimant's injury was by accident arising out of and in the course of his employment, and that his claim had been filed within the six-months period of limitation provided by the act.

After a hearing, the commission made a finding that the employer's compensation liability was fully covered by the insurer, and that the injury to the claimant was by accident arising out of and in the course of his employment, and thereupon entered an award in favor of the claimant for $35 for medical aid, and $132 for permanent partial disability, or for the aggregate sum of $167.

An appeal was thereafter perfected to the circuit court by the employer and the insurer, which resulted in the entry of a judgment affirming the award of the commission with costs to the employer. Following this, a motion for a new trial was filed by "the defendant," and an exception was duly saved to the order of the court overruling it, after which the employer alone prayed for and was allowed an appeal to this court.

In passing, it may be said that the reason why no appeal was taken by the insurer, who is the one primarily and directly liable to the claimant under Section 27 of the Act, Laws 1927, p. 506, does not appear.

We gather from the briefs that throughout the course of this proceeding the chief controversy between the parties has centered around the effect to be ascribed to Section 34 of the Act, requiring the employer, within ten days after knowledge of an accident resulting in personal injury to an employee, to notify the commission thereof; to Section 38, which provides that no proceedings for compensation shall be maintained unless written notice of the time, place, and nature of the injury, and the name and address of the person injured, is given to the employer as soon as practicable after the happening thereof, but not later than thirty days after the accident, unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive the same; and to Section 39, which provides that no proceedings for compensation shall be maintained unless a claim therefor is filed with the commission within six months after the injury, save that in all other respects the limitation shall be governed by the law of civil actions other than for the recovery of real property.

In this instance it would appear from the testimony that no written notice was ever given the employer by the employee, although oral notice was given to the foreman within less than thirty days; and we repeat that notice was not given the commission by the employer until February 8, 1928, and that the employee's claim was not filed with the commission until February 10, 1928, which was six months and seven days after the date of the accident.

Appellant argues that Section 39 is not properly a statute of limitation, that is, a mere limitation upon the remedy, but that compliance with it is a condition precedent to the exercise of a newly created right, which condition is imposed by the same statute that gives the right; and that compliance with the statute is a jurisdictional matter to the extent that while the commission has jurisdiction to determine from the facts before it whether Section 39 has been complied with, once it decides the question in the negative, its jurisdiction ends. As to the other points in controversy, appellant argues that its own failure to report the accident to the commission, as required by Section 34, did not estop it to urge that Section 39 was not complied with by the employee, and that the latter's failure to comply with Section 38 as to the giving of notice precluded him from the subsequent maintenance of proceedings to enforce his claim.

Counsel for the claimant argues, on the other hand, that the failure of his client to have given a written notice of the accident was waived by the employer because not pleaded as a defense; that beyond this, the employer had actual notice of the accident, so that the giving of a written notice would have been a useless formality; that by reason of the employer's failure to give notice to the commission within ten days, as required by Section 34, it was guilty of a wrongful act which prevented the commission from seeing to it that the claim was filed in time, as it would undoubtedly have done in the discharge of its duties under Section 36, requiring it to forward to the parties certain forms of agreement for compensation, and that it is thereby estopped to urge that the claim is barred under Section 39; and finally, that the claim was actually filed in time, since it was filed within six months after the injury was ascertained, though not within six months after the accident.

In this connection it will be observed that Section 39 requires the claim to be filed within six months after the injury, as distinguished from the accident; and counsel argues that the injury is the result of the accident, and that if the result is delayed, the injury is delayed, and the beginning of the period for the running of the limitation is likewise delayed. Upon this premise, counsel for the claimant calls our attention to the fact that the commission made its award upon the basis of permanent partial disability; and he insists that the accident could not have resulted in an ascertainable permanent partial disability within the first seven days thereafter so as to have had the consequence of rendering the filing of the claim untimely within six months and seven days after the accident.

Incidentally the learned trial judge seems to have taken a similar view of the case, as shown by a memorandum which he filed at the time of the rendering of his decision, although he based his own conclusion largely upon the language of section 1315, Revised Statutes 1919, which is concededly made a part of the compensation act by the express terms of Section 39, and which provides that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or of duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."

In passing on the several questions raised on this appeal, all having to do in one way or another with the basic proposition of whether sections 38 and 39 were complied with, it would first seem necessary to determine when the injury was received so as to start the running of the period of limitation, since, as we have heretofore pointed out, the terms "injury" and "accident" are

not synonymous, and it is within six months after the injury, and not within six months after the accident, that proceedings for compensation must be brought. We are aware that the courts of our several sister states are not in full accord in their holdings upon this question, and indeed we doubt if it is possible to lay down any general rule which would fit every case which might arise, because of the countless ways in which injuries may manifest themselves.

The allowance of the argument of counsel for claimant in this case—that the limitation did not begin to run until after it was possible to determine that there would be a permanent partial disability—would require us to hold that the Legislature used the term "injury" in section 39 in the sense of "disability," which we clearly think is not a proper conclusion to draw. Disability is a possible and most usual, although not a necessary, consequence of injury, and the Legislature so recognized the fact in secton 13, and in those sections immediately following and to be construed with it, by providing that, apart from the payment of such compensation as a particular disability might warrant, the employer should also provide such medical care as might be necessary "to cure and relieve from the effects of the injury."

Beyond this, however, the Legislature has set the matter largely at rest by having itself expressly defined the term "injury" as used throughout the act, where, in section 7, it said that the term should mean "only violence to the physical structure of the body and such disease or infection as naturally results therefrom." Obviously the words "disease" and "infection" were there used in their ordinary and usual sense, and not in the sense of disability, as would have to be the case if the contention of counsel for claimant is not to be disproved by the prior language employed in the Legislature's own definition.

We can readily imagine that such an accident might easily occur as to produce a latent and progressive condition, showing no appreciable ill effects at the time, but which would later culminate in a compensable injury. It was undoubtedly for the purpose of protecting the employee's rights under such a situation that the Legislature in its wisdom saw fit to make the limitation run from the date of the injury, and not from the date of the accident. But we have no such case before us. Here the injury was a fracture of the metacarpel bone of the second toe, and it immediately followed the impact of the wrench upon the foot. Though all the consequences of the injury were not then known, in that the full extent and character of the disability resulting therefrom could not then be determined, the injury itself was complete as a violence done to the physical structure of the body, and was as capable of ascertainment at that time as at any other.

Thus our conclusion is that in this particular instance the date of the injury was contemporaneous with the date of the accident, and that the six-months limitation period began to run from that time. Not only do we think that this is the reasonable view to take of the situation, but incidentally it conforms to the general rule governing actions and claims for personal injuries, which is that "the cause of action accrues and the statute begins to run at the time of the injury—but not until that time—notwithstanding the full extent of the injury is not then known or developed, or that defendant's negligence which caused the injury occurred a long time previous thereto." [37 C. J. 897, and cases cited.] Furthermore, it is not without its significance that in so holding we also bring ourselves within the rule consistently announced and followed by our own courts in determining the time for the commencement of actions, which is that a statute of limitation begins to run when the cause of action has accrued to the person asserting it, the accrual being whenever such a breach of duty has occurred, or such a wrong has been sustained, as will give a right then to bring and sustain a suit. [State ex rel. v. Logan, 195 Mo. App. 171, 190 S. W. 75; Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075; Eoff v. Clay, 9 Mo. App. 176; Clay v. Walker (Mo. App.), 6 S. W. (2d) 961.]

This brings us squarely to the question, therefore, of whether the claim in this case was barred, as counsel for appellant so earnestly contend, since it was concededly not filed until six months and seven days after the injury.

We think the argument is all one way that Section 39 is not a statute of limitation in the usual sense of the word, by which we mean that it is not a limitation upon the remedy, which may or may not be urged by the opposing party, but that rather it is a limitation upon the right itself, by which the very right is extinguished if not exercised before the period of the limitation has run against it.

It must be kept in mind that a wide distinction exists between statutes providing for a limitation upon the remedy, and special statutory limitations enacted in qualification of a given right. The ordinary statute of limitation confers upon a defendant the privilege of interposing a definite limitation of time as a bar to the enforcement of a liability existing independently of the statute which defines the limitation. Such statutes, therefore, are merely limitations upon the remedy; but the second class of statutes are more, for they create a right of action conditioned upon its enforcement within a prescribed period, the theory being that the lawmaking body which has the power to create the right may affix the conditions under which it is to be enforced, so that a compliance with those conditions is essential. In other words, where time is made the essence of the right created, the limitation is an inherent part of the statute out of which the particular right arises, so that there is no right of action whatsoever inde-

pendent of the limitation, and a lapse of the statutory period operates to extinguish the right altogether. [37 C. J. 686.]

It already stands decided that the compensation act is not cumulative to or supplemental of the common law, but instead is wholly substitutional in character, and that the new right and remedy created by the act are entirely exclusive of the right and remedy which were otherwise available at common law. [Kemper v. Gluck (Mo. App.), 21 S. W. (2d) 922.] Hence the rule becomes particularly applicable, that "where by statute a right of action is given which did not exist by the common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control, no matter in what forum the action is brought." [37 C. J. 732.] Consequently the courts throughout the length and breadth of the land, in construing local statutes of similar import, have held, as we must hold, that the making of a claim for compensation within the period fixed by the act is jurisdictional and mandatory, and is a condition precedent to the right to maintain such proceedings. [London Guarantee & Accident Co. v. Industrial Commission, 83 Colo. 252, 263 Pac. 405; Simmons v. Holcomb, 98 Conn. 770, 120 Atl. 510; United States Casualty Co. v. Smith, 162 Ga. 130, 133 S. E. 851; City of Rochelle v. Industrial Commission, 332 Ill. 386, 163 N. E. 789; Chicago Circular Adv. Service v. Industrial Commission, 332 Ill. 156, 163 N. E. 408; American Car & Foundry Co. v. Industrial Commission, 335 Ill. 322, 167 N. E. 80; Wilburn v. Auto Exchange, 198 Ky. 29, 247 S. W. 1109; Garbouska's Case, 124 Me. 404, 130 Atl. 180; Dochoff v. Globe Construction Co., 212 Mich. 166, 180 N. W. 414; Schild v. Pere Marquette R. Co., 200 Mich. 614, 166 N. W. 1018; Lipmanowich v. Crookston Lumber Co., 168 Minn. 332, 210 N. W. 47; O'Esau v. E. W. Bliss Co., 188 App. Div. 385, 177 N. Y. S. 203; McClenahan v. Oklahoma Ry. Co., 131 Okla. 73, 267 Pac. 657; Menna v. Mathewson (R. I.), 137 Atl. 907; Maryland Casualty Co. v. Industrial Commission (Utah), 278 Pac. 60.]

But though section 39 is a statute of extinguishment and not of repose, there are yet matters of further consideration to be taken into account before we may say as a matter of law that the instant claim was forever barred because not prosecuted within six months after the date of the injury. For instance, it will be observed that the Legislature was not satisfied with merely fixing the limitation of six months upon the right, but that it went further and said that "in all other respects such limitations shall be governed by the law of civil actions other than for the recovery of real property, but the appointment of a guardian shall be deemed the termination of legal disability from minority or insanity."

The statutes thus referred to are to be found in Articles IX and IXa, sections 1315-1345, Revised Statutes 1919, being the general

limitations applicable to personal actions. The conceded effect of such reference was to adopt all of the provisions of the law on civil actions in that regard, and to make them as much a part of section 39 as if written out in full therein. Moreover such express adoption and reference was necessary if the general statutes were to be given effect in compensation cases, for without the saving clause of section 39, the general statutes would have been inapplicable, inasmuch as section 1336, Revised Statutes 1919, provides that the article on limitations to personal actions shall not extend to any action which is or shall be otherwise limited by any statute, but that such action shall be brought within the time limited by such statute. [Clark v. Kansas City, St. L. & C. R. Co., 219 Mo. 524, 118 S. W. 40.]

With it determined, therefore, that the running of the six-months period may be postponed on proper facts through the operation of the saving clause of section 39, we are brought to a consideration of the contention of counsel for claimant, that in this particular instance the running of the period of limitation was stayed through the provisions of section 1334, Revised Statutes 1919, one of the general statutes adopted as a part of the compensation act pursuant to such saving clause. This statute provides that "if any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action shall be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." Here there was concededly no absconding or concealing by appellant, but the latter did neglect to notify the commission of the accident as required by section 34 of the Act, which counsel for claimant argues was an improper act within the purview of section 1334.

Necessarily the expression "improper act," as it is used in the statute, is a variable term, and incapable of exact definition. Indefinite as the term is, however, it would appear that it could not well have been made more definite without seriously impairing the beneficent operation of the statute, for obviously the Legislature, in the enactment of the same, could not have been expected to foresee and anticipate every manner and sort of wrongful conduct of which some future defendant would be guilty.

We appreciate that section 1334 was not designed to compel a wrongdoer to advise the party wronged that he has a cause of action against him which he might successfully assert, nor to protect plaintiffs who are ignorant of the facts necessary to enable them to bring suits, unless that ignorance is occasioned by some improper conduct on the part of the defendant. In other words, from the negative conclusions which are to be found most frequently stated in the books, the positive rule is drawn that the improper act referred to in the statute must be one in the nature of a fraud that will prevent the

commencement of the action. [Davis v. Carp, 258 Mo. 686, 167 S. W. 1042.]

Now fraud may manifest itself in devious ways. It comprises all acts, omissions, and concealments involving a breach of legal or equitable duty, and resulting in damage to another. It may be either active or passive; and while it is true that ordinarily a distinction is to be drawn between mere silence and active concealment, yet mere silence alone will be held to be a fraud where the circumstances are such as to impose a duty upon one to speak, and he deliberately remains silent. [26 C. J. 1071.]

So in this instance, in determining whether appellant was guilty of an improper act within contemplation of section 1334, by failing to notify the commission of the accident as required by section 34, we must not lose sight of the fundamental purpose of the compensation act, and the relief it was designed to afford. It is common knowledge that the intention was to dispense with the services of the members of our own profession to the fullest extent possible, and to make available to the injured employee an easy and certain means of obtaining compensation; and in the passage of the act, the Legislature must have been fully appreciative of the fact that a large percentage of the workmen coming within its provisions would be not only ignorant of their rights thereunder, but in many instances so handicapped by lack of education or by unacquaintance with our language as to be helpless in the matter of securing relief.

In requiring the employer to give prompt notice to the commission of an accident coming to his notice, the Legislature undoubtedly intended to counteract this very evil. In fact it was so insistent upon having the employer give notice to the commission that it made him guilty of a misdemeanor if he failed to comply with his duty in that regard. It further made it the duty of the commission, upon receipt of notice from the employer, to send blanks, both to the employer and to the employee, and in the case of a dispute arising between the two as to the merits of the claim, to assist the employee in filing his claim, and in securing an early adjudication thereof.

If sections 34 to 36, inclusive, are not to be wiped out of the act for all practical purposes, and their beneficial effect destroyed, then we must hold that the failure of the employer to give notice to the commission as required by section 34, is such an improper act as under section 1334 to toll the running of the statute. However, it must be borne in mind in this connection that it is by a tolling of the statute that the claimant's rights are saved, and not by any application of the doctrine of waiver or estoppel, as counsel here contend, for where the particular statutory provision is jurisdictional, as is section 39, waiver and estoppel have no play.

So in this case, appellant had notice of the injury within two weeks after it was received. It had ten days thereafter in which to comply

with its duty of in turn notifying the commission. It did not give such notice, however, until February 8, 1928, and the claim was filed with the commission on the second day thereafter. Consequently we conclude that for the breach by appellant of the affirmative action required of it by a section of the same act on which it now relies to defeat the claim, the running of the period of limitation was stayed from the time it became in default until the time it gave notice to the commission, under which view of the matter the claimant's right was not extinguished, and his claim was timely filed. [Sonnenfeld v. Rosenthal-Sloan Millinery Co., 241 Mo. 309, 145 S. W. 430; Edwards v. Rich (Mo. App.), 180 S. W. 415, 418; Hoffman v. Parry, 23 Mo. App. 20.]

This brings us then to the question of whether the claim was barred because notice in writing was not given to appellant by the claimant within thirty days after the accident, as required by section 38 of the Act. As in the case of section 39, this section is also jurisdictional, but its terms are not so stringent as in the former, and the exceptions to it are more fully pronounced. In fact the Legislature worded the condition of the section in the alternative, namely, that written notice should be given, unless the commission should find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive the same.

Thus, while section 38 presupposes a notice to the employer in writing, its evident purpose after all is to insure that he receives actual notice of the accident for which he may be called upon to pay compensation; and if he is "prejudiced" by failure to have received such notice, it must be that by reason thereof he has been rendered less able to resist the claim. [Itzkowitz v. Finer & Bachrach, 218 App. Div. 440, 218 N. Y. S. 272.]

If the claimant proves the giving of timely and adequate written notice, the question as to his compliance with section 38 is at an end. Failing in this, the burden is undoubtedly upon him in the first instance to show that the employer was not prejudiced by failure to have received such written notice. The Oklahoma courts in particular, in construing a statute of that state much like our own, have announced a rule which strikes us as being eminently sound, which is that when the employee makes proof of actual notice, he makes a prima-facie showing of want of prejudice to his employer, whereupon the burden shifts to the latter to prove that in spite of such actual notice, he has still been prejudiced by the failure to have received a written notice. [Oklahoma Gas & Electric Co. v. Thomas, 115 Okla. 67, 241 Pac. 820; Graver Corporation v. State Industrial Commission, 114 Okla. 140, 244 Pac. 438; Ford Motor Co. v. Ford, 128 Okla. 221, 262 Pac. 201; Fidelity Union Casualty Co. v. State Industrial Commission, 130 Okla. 65, 265 Pac. 131; Industrial Track Construction Co. v. Colthrop, 132 Okla. 77, 269 Pac. 263.]

Moreover we know of no case, though we are not bold enough to say that none may be found to the contrary, which holds that notice to the foreman is not sufficient, if the employee's failure to have given written notice is otherwise to be excused.

In this case, notice was given to the foreman within two weeks after the accident, and when the answer of appellant and its insurer was filed, there was no contention made about any noncompliance with section 38. However, it is undoubtedly true, as has been heretofore expressed, that the failure of appellant to have raised a jurisdictional point, either before the commission or in the circuit court, does not operate as a waiver so as to preclude it from asserting the point on this appeal. [Bushnell v. Industrial Board, 276 Ill. 262, 114 N. E. 496; American Car & Foundry Co. v. Industrial Commission, supra.]

Whether a claim for compensation has been made within six months after the injury as a condition precedent to the right to maintain proceedings, and whether timely and adequate notice of the accident has been given, constitute questions of fact to be determined like any other similar questions. [City of Rochell v. Industrial Commission, supra; Inland Rubber Co. v. Industrial Commission, 309 Ill. 43, 140 N. E. 26.]

The trouble is that in this particular instance the commission made no express finding upon either question, one of which was pleaded and asserted as a bar to the maintenance of the proceedings, though the other was not. In legal fiction, since the provisions of sections 38 and 39 are jurisdictional and mandatory, and constitute conditions precedent to the claimant's right to maintain compensation proceedings, there should be an express finding by the commission in every case that both sections have been complied with. This requirement our commission seems never to have observed, and if we were to stand upon the technical letter of the law, it would appear that a reversal would have been in order in every case that has thus far come before us.

We appreciate the fact that the commission is not a court of general or common-law jurisdiction, but is purely and solely an administrative tribunal, specifically created to administer the one act, and that as such it possesses only such authority and powers as have been conferred upon it by express grant, or as arise therefrom by implication as being necessary and incidental to the full exercise of the powers expressly granted. Theoretically it follows, therefore, that full performance of the conditions of the act is an essential prerequisite to the commission's jurisdiction, and that the statutory limitations upon the exercise of its jurisdiction cannot be enlarged, diminished, or destroyed by express consent, or waived by acts of estoppel

However, we cannot get away from the fundamental purpose of the act, even if we wished; and though the Legislature had not specifically directed us to give the act a liberal construction, we would have

felt bound to do so anyway. Consequently, in determining the propriety of the award made in the instant case, we must have a thought to the manner in which the Legislature has required the act to be administered.

It is significant that the act itself requires only one of the three members of the commission to be a lawyer (section 56), and that it also provides in section 41 that any one member shall be empowered in a summary proceeding to hear the parties at issue, and to determine the dispute. However, the full intent of the Legislature with reference to the avoidance of technicalities in the administration of the law is perhaps most succinctly expressed in section 51, where it is directly provided that all proceedings before the commission or any commissioner shall be simple, informal, and summary, and that no defect or irregularity therein shall invalidate the same.

In the positive legislative intent thus expressed throughout the act, there must have been a definite purpose in view, which we think undoubtedly was that in the administration of the law, procedural matters are to be treated as subsidiary in enforcing the substantive rights of the parties, and that a prima-facie presumption is to be indulged in favor of the commission's jurisdiction in a case otherwise coming within the act. In other words, if no contention is made of a noncompliance with sections 38 and 39, the irregularity arising from the commission's failure to have expressly found that such sections had been complied with should not serve to invalidate the award under the statutory mandate as to how irregularities are to be viewed; nor in a case like the present, where the employer's failure to have complied with section 34 stands undenied, with a consequent postponement of the running of the limitation, should the award be reversed and the cause remanded for the commission to make the only finding of fact possible on the record before it. [Broniszewski v. Baltimore & O. R. Co., 156 Md. 447, 144 Atl. 345.]

Consequently we conclude that the award made by the commission was proper as against the attacks now made upon it, and that the judgment of the circuit court affirming it should in turn be affirmed by this court. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.