CORBINE HENRY WHEELER v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—42 S. W. (2d) 579.

Division Two, October 1, 1931.

*Montgomery & Rucker* for appellant.

*D. S. Lamm* and *Barnett & Hayes* for respondent.

890

WESTHUES, C.—This case was certified to this court by the Kansas City Court of Appeals. [See 33 S. W. (2d) 179.] The reason assigned is that the court considered its opinion to be in conflict with the decision of the St. Louis Court of Appeals in the case of Schrabauer v. Schneider Engraving Products, Inc., 25 S. W. (2d) 529.

The statement of the case, and that part of the opinion of the Kansas City Court of Appeals wherein there is no conflict with the Schrabauer case, supra, read as follows:

"This proceeding was instituted on April 20, 1929, before the Workmen's Compensation Commission, by the filing of a claim for compensation by respondent for the loss of the sight of his right eye. The commission made an award denying the claim. Claimant appealed to the circuit court where the award of the commission was reversed and judgment was entered in favor of the claimant in the sum of $1063.92, less the sum of $50, which had theretofore been paid claimant. Defendant has appealed.

"In the claim filed it was alleged that by reason of an accident, which occurred on March 30, 1927, claimant had sustained an injury to his right eye of such character that the sight thereof became gradually impaired until total blindness resulted on December 15, 1928.

"Defendant filed an answer to the claim admitting the occurrence of the accident, but denying claimant's blindness was due to such accident. As a part of the defense it was alleged that the commission was without jurisdiction because the claim had not been filed within the time provided by Section 39 of the Workmen's Compensation Act. [See Laws 1927, p. 511.] In its award the commission gave as its reason for allowing no compensation:

" 'That this commission has no jurisdiction to pass upon this claim because of employee's failure to comply with Sec. 39, Workmen's Compensation Act, Laws of 1927. Disability in accordance with Section 17 of said Act being apparent within 90 days after the accident and claim was not filed until two years after date of accident.'

"It appears by plaintiff's testimony that on March 30, 1927, while he was in the course of his employment with defendant and engaged in driving a spike into a railroad tie in defendant's railroad yards in Sedalia, Missouri, 'a piece of something flew' into his right eye; that his eye pained him at the time of the accident; that he worked the remaining thirty minutes until quitting time; that he then went home, attempted to see a doctor that night, without success, and the next day called upon Dr. Titsworth; that the doctor told him that 'something had flew through the eye and cut it and gone out again;' that the doctor put some medicine in his eye and bandaged it; that he called on Dr. Titsworth twice a day until the expiration of about a month, when the doctor took the bandage off.

"Claimant further testified that immediately after the accident his eye was affected, in that: 'It seemed like I was looking through celluloid or something like that. I could not see to tell what anything was. It was like I was looking through something cloudy;' that when the bandage was taken off his vision was still cloudy; that when the doctor got ready to release him he asked the doctor if the latter thought that the eye would go out and the doctor replied, 'No, he did not think it would;' that the doctor said that the medicine that he 'had put in the eye would cause it to look hazy and cloudy' but 'when the medicine got out' the eye would clear up and 'be all right;' that he believed what the doctor told him, but the eye continued to get cloudy and the vision gradually became impaired until between December 15, 1928, and January 1, 1929, when he was no longer able to see light by the use of the eye; that he did not see the doctor after the bandage was removed because the doctor told him that his eye would get all right; that he had never had any other accident of any kind to the eye; that, beginning with the date of the accident, he was out of employment sixty days, when he went to work for the M. K. & T. Railroad Company; that within ninety days he had 'practically lost' the vision of his eye; that for 'all

practical purposes' the eyesight was gone ninety days after the accident occurred; that prior to the total loss of the vision of his eye he could not read with it and could not see 'anything further than that door there (indicating);' that he could recognize a person three or four months after the accident 'if I could get close enough;' that he 'could see light and the images of anything if it was close to me and I could see that way until in December,' 1928, and could see 'a little' until the last of that month; that before he completely lost the sight of his eye he depended on his left eye 'for all practical purposes.'

"Claimant further testified that defendant's claim agent came to see him three or four days after the accident and took a statement from him relative to it and that on the day following the removal of the bandage he settled with the defendant for $50. The evidence shows that in the release the accident was treated as "interstate" and of course there was no report of it to the Workmen's Compensation Commission and, consequently, no approval of the settlement by it.

"Dr. Titsworth testified that he was employed by the Missouri Pacific Hospital Association; that claimant first came to see him on April 1, 1927, and he treated him until April 25, 1927; that he examined plaintiff's eye and found that plaintiff had 'a cut in the right eye on the nasal side, through the cornea into the ciliary body;' that the eye responded to treatment; that the bandage was removed on April 25th; that at that time claimant was advised that all inflammation should subside and the eye clear up within the next week or ten days; that claimant was not discharged by him; that he expected to continue the treatment until all the inflammation had subsided, but the claimant did not return for further treatment; that the witness did not again see him until some time in February, 1929, at which time plaintiff was totally blind in the right eye. The doctor further testified that plaintiff's blindness was the result of inflammation; that the cause of inflammation is an infection; that it is possible that the blindness that plaintiff was suffering from was caused by the accident, but not probable; that it was his opinion that claimant's blindness was the result of some intervening inflammation.

"It is defendant's contention that claimant's sight was impaired immediately following the accident and, consequently, he, knowing of this impairment at that time, suffered a compensable injury then and his claim, not having been filed within six months after the accident, was barred by Section 39 of the Workmen's Compensation Act. Section 39 provides as follows:

" 'No proceedings for compensation under this act shall be maintained unless a claim therefor be filed with the commission within

six months after the injury or death, or in case payments have been made on account of the injury or death, within six months from the date of the last payment. In all other respects such limitations shall be governed by the law of civil actions other than for the recovery of real property, but the appointment of a guardian shall be deemed the termination of legal disability from minority or insanity.'

"Section 7 (b) provides:

" 'The word "accident" as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term "injury" and "personal injuries" shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom.'

"Under some compensation statutes the period of limitation for the filing of a claim with the commission commences to run with the time of the accident. However, in view of the peculiar wording of our statute, the limitation does not begin to run until a compensable injury has been received. There is a distinction between an accident and an injury. See Johansen v. Union Stock Yards Co., 99 Neb. 328, 156 N. W. 511; Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, 1015. . . . The injury is not the accident, but the result of the accident. If the result is delayed the injury is delayed. Cooke v. Holland Furnace Co., supra.

"The parties hereto do not agree as to at what time an injury is said to have occurred. Defendant claims that 'injury,' as that word is used in the act, means that time after the accident when it becomes reasonably discoverable and apparent that a compensable injury has been sustained. On the other hand claimant seems to contend that the word 'injury' means the specific disability for which a claim for compensation is made. Compensation is sought in this case under the provisions of Section 17 of the Workmen's Compensation Act, which provides for compensation for the 'complete loss of the sight of one eye' as a permanent partial disability. However, the act provides for other character of compensation; Section 13 of the act provides compensation in the way of medical aid, Section 15 for temporary total disability, Section 16 for temporary partial disability. Section 17 (under which the claim is made in this case) provides for permanent partial disability.

"We do not think that the Compensation Act contemplates a construction such as claimant would have us give it. It was stated by the St. Louis Court of Appeals in Schrabauer v. Schneider Engraving Product, Inc., 25 S. W. (2d) 529, 532:

" 'We can readily imagine that such an accident might easily occur as to produce a latent and progressive condition, showing no appreciable ill effects at the time, but which would later culminate in a compensable injury. It was undoubtedly for the purpose of protecting the employee's rights under such a situation that the Legislature in its wisdom saw fit to make the limitation run from the date of the injury, and not from the date of the accident.'

"While Section 7 (b) of our statute affects the time of the commencement of the running of the limitation provided in Section 30 and protects the rights of the employee during the time after the accident when it is not apparent that it has resulted in a compensable injury, on the other hand, Section 39, providing a limited time for the filing of the claim, is for the benefit of the employer, protecting him against stale claims, stale, not only as to the matter as to whether the accident has culminated in a particular disability, but stale as to other matters, including one as to whether the accident was a compensable one. All statutes of limitations are enacted upon the theory, in part, that witnesses may die or become scattered and unavailable by the lapse of time. As before stated, Section 7 (b) affects the time when the limitation starts to run so that it does not begin until such time as it appears that a compensable injury has been sustained. Thus it is to protect the interest of the employee. However, there is nothing in the act to indicate that the limitation does not begin to run until such time as the most serious disability that the employee may sustain is ascertainable. This might take years to ascertain. Under claimant's theory, the claim being filed within six months after he lost the sight of his eye, he can get compensation for that, but had the eye troubles ended more favorably, so that he would have been entitled to merely temporary total or temporary partial disability, the claim would have been filed too late. There is nothing in the act to suggest that if the limitation bars the right to one compensation all are barred. Sections 7 (b) and 39 do not use the term 'disability,' but the word 'injury.' There is a vast difference between these terms. [Schrabauer v. Schneider Engraving Product, Inc., supra; Gibbons v. Mart & Rowelle, 181 App. Div. 142, 168 N. Y. Supp. 412.]

"We think there is no question but that in cases where latent injuries are involved the claim must be filed within six months from the time it becomes reasonably discoverable and apparent that *a* compensable injury has been sustained. [Texas Employers' Ins. Ass'n v. Wonderley (Tex. Civ. App.), 16 S. W. (2d) 386; Nelson H. Hustus' Case, 123 Me. 428, 123 A. 514; Esposito v. Marlin-Rockwell Corp., 96 Conn. 414, 114 A. 92; In re Brown, 228 Mass. 31, 116 N. E. 897; Selders v. Cornhuskers Oil Co., 111 Neb. 300, 196 N. W. 316; McGuire v. Phelan-Shirley, 111 Neb. 609, 197 N. W. 615.]

"Our interpretation of the term 'injury' as used in Section 39 of the act, of course, would not have affected claimant's right to compensation for the complete loss of the sight of his eye, had he filed his claim for a less disability or injury within six months after he received a compensable injury, for Section 42 of the act empowers the commission to change an award. The purpose of the Legislature as disclosed by the act to our minds plainly shows that it was their intention to provide that the claim should be filed within six months after the receipt of *a* compensable injury by the employee and, should it transpire thereafter that the injury received has developed into a more serious injury compensable in a different manner, the commission should change the award, if any, previously made.

"There is no question but that claimant received a compensable injury at the time of the occurrence of the accident in this case. While it appeared that the injury to his eye was not serious and at that time he could not have been compensated for its complete loss, yet the inference is plain that his injury was such that he was required to quit work and he was then entitled to medical aid and at the end of sixty days, at least, was entitled to compensation for temporary total disability. There can be no question but that claimant sustained a compensable injury within ninety days after the accident and his claim, not having been filed for over a year after the expiration of this time, is barred. It seems from the award of the commission that it was of the opinion that a disability 'in accordance with Section 17 of said act' was *apparent* within ninety days after the accident. There is no claim that it was the intention of the commission to find that claimant substantially lost the complete sight of his eye within ninety days. The correctness of the specific finding of the commission is questionable and does not disclose that it decided the case upon the proper theory as to why the claim was barred. However, the result of the finding of the commission is undoubtedly correct under the undisputed evidence and the same should be upheld.

"We have examined the case of Johansen v. Union Stock Yards Co., 99 Neb. 328, 156 N. W. 511, relied upon by claimant. In that case the result of the accident was not apparent at the time of its happening. It appears that the employee treated his condition as trivial and did not, until December 25th, consult a physician. He was then advised to go to the hospital and consult an expert. This was done by the employee and he then found that his eye was in a serious condition. The court held that it was not until this discovery that the statute of limitation, relative to the making of claims, began to run. As we view the decision in the Johansen case it treats the injury as a latent one which did not culminate in a com-

pensable injury until the serious condition of the eye was known to the employee. As we view it, it is not a decision in favor of the contention of the claimant in the case at bar."

The above statement of the case, by the Kansas City Court of Appeals, is full and complete. The portion of the opinion quoted correctly and ably disposes of the questions presented. We, therefore, adopt the statement and that part of the opinion, quoted, as our own.

There remains but one question in the case, and that is the one that gave rise to the conflict in the learned opinions of the Courts of Appeals.

The St. Louis Court of Appeals, in the Schrabauer case, held that the failure of the employer to report an accident as required by Section 34 of the Compensation Act, tolled the running of the six months' limitation period, within which an employee must file his claim as provided in Section 39 of the act. The learned court reached this conclusion by holding that the Legislature, by the language in the concluding part of Section 39, by reference, adopted and made Section 1334, Revised Statutes 1919 (now Sec. 879, R. S. 1929), a part of the Compensation Act. That court further held that the mere failure to report an accident, by the employer, as required by Section 34, was such an improper act, as contemplated by Section 1334, supra, as to toll the Statute of Limitations.

The Kansas City Court of Appeals in its opinion held the mere failure to report an accident, by the employer, in violation of Section 34 of the Compensation Act, did not toll the Statute of Limitations of six months, as provided by Section 39 of the Compensation Act, unless defendant was guilty of some fraudulent intent. The Court of Appeals found there was nothing in the record tending to show why defendant did not report the accident, except the inference to be drawn from the suggestion in the record, that the parties were under the impression that the accident came within the Federal Employers' Liability Act. Therefore, not within the jurisdiction of the Compensation Commission. A settlement was made between plaintiff and defendant without the approval of a Compensation Commission. The Court of Appeals held that since the claim was not filed within six months after a compensable injury had been received by claimant, the claim was barred by virtue of Section 39 of the Compensation Act.

This identical question was before Division One of this court in the case of Mathilda Higgins v. Heine Boiler Co., a corporation, et al., reported in 328 Mo. 493. In the opinion of the court, written by SEDDON, C., six pages are devoted to this question. The Schrabauer case, supra, and the meaning and intent of Section 1334, Revised Statutes 1919, are discussed at length. The conclusion reached by

the court was that (granting for the sake of argument that Section 1334 was made a part and parcel of the Compensation Act, by the concluding clause of Section 39, supra), a failure on the part of the employer to report an accident, as required by Section 34, was not such an improper act as to toll the running of the limitation period of six months, within which, the claimant is required to file his claim as provided in Section 39. We approve the conclusion reached in the Higgins case. We may add to what was there said, that if Section 1334, supra, was made a part and parcel of the Compensation Act, as held in the Schrabauer opinion, then the Legislature is presumed to have had in mind the construction and interpretation placed on Section 1334 by this court. What is meant by an 'improper act' referred to in that section is definitely settled. It has been uniformly held to mean, some act on the part of the defendant, that would hinder or delay the commencement of a suit, the service of process or some necessary step in relation thereto. [Stark v. Zehnder, 204 Mo. 442, 102 S. W. 992 l. c. 995; Wells v. Halpin, 59 Mo. 92, l. c. 95; Keay v. Mantz (Mo. App.), 12 S. W. (2d) 509.]

The wording of Section 1334 excludes the idea that a mere failure to report an accident, by an employer, tolls the Statute of Limitations. The section reads: "If any person, by absconding or concealing himself, or by any other improper act, *prevent the commencement of an action,* such action may be commenced within the time herein limited, *after the commencement of such action* shall have ceased to be so prevented." (Italics ours.) The failure to report an accident, by the employer, in no way prevents the injured employee from filing a claim for his injuries with the commission. The filing of a claim or a hearing thereon, by the commission, is in no way dependent upon the filing of a report of the accident by the employer. Therefore, if we are to hold, which is not now necessary, that Section 1334 is a part of the Compensation Act, yet, in view of the construction universally placed on the phrase "improper act" by this court, we must conclude that the Legislature, having that construction in mind, did not intend that a mere failure to report an accident, by the employer, as required by Section 34, would toll the Statute of Limitations contained in Section 39.

Attorneys for respondent, in their brief, insist that the failure of the employer to report an accident, in violation of Section 34, is such a breach of a legal duty as to constitute constructive or legal fraud. Therefore, an improper act within the meaning of Section 1334. The St. Louis Court of Appeals, when considering this question in the Schrabauer case, supra, had the following to say:

"(7) Now fraud may manifest itself in devious ways. It comprises all acts, omissions, and concealments involving a breach of legal or equitable duty, and resulting in damage to another. It

may be either active or passive; and while it is true that ordinarily a distinction is to be drawn between mere silence and active concealment, yet mere silence alone will be held to be a fraud where the circumstances are such as to impose a duty upon one to speak, and he deliberately remains silent. [26 C. J. 1071.]"

A reading of the cases, cited in 26 Corpus Juris, in support of the text at page 1071, cited as authority by the St. Louis Court of Appeals in support of the rule, that mere silence alone under certain circumstances is fraud, will disclose that the circumstances of the parties in the cases cited were entirely different from those in the present case. The text itself in 26 Corpus Juris, Section 14, page 1071, precludes the present case from coming within the rule. It reads: "Where the law, by reason of the relation of the parties, their respective means of knowledge, the subject-matter with reference to which they are dealing, or other circumstances, imposes a duty upon one of them to disclose all material facts *known to him and not known to the other*, mere silence in violation of this duty *with intent to deceive* will amount to fraud." (Italics ours.) For cases supporting this rule see 12 R. C. L. 307, sec. 68, and 312, sec. 73, and the cases there cited.

Plaintiff wholly failed to prove that defendant had knowledge of any facts with reference to the accident that were not known to plaintiff. Neither does the record disclose that defendant was guilty of any fraudulent act that tended to prevent plaintiff from filing his claim with the Compensation Commission. One purpose of limitation statutes is to prevent the filing of fictitious claims at a late date when investigation as to their genuineness has been rendered difficult by lapse of time. This purpose would be defeated entirely if a plaintiff were permitted to escape the limitation period by pleading that the alleged accident had not been reported by the employer. Such a rule would open the door to the filing of fraudulent fictitious claims to which the limitation statutes have always been a bar. We, therefore, rule that the Kansas City Court of Appeals was correct in holding that the mere failure to report an accident by the employer does not toll the Statute of Limitations. The holding of the St. Louis Court of Appeals to the contrary is incorrect and should not be followed.

It is, therefore, ordered that the judgment of the Circuit Court of Pettis County, Missouri, setting aside the order of the Compensation Commission, be reversed, and that the case be, and is hereby remanded to the circuit court, with directions to approve and affirm the finding and order of the Compensation Commission. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.