**Dolores BROWN, Employee-Claimant, Respondent,**

**v.**

**DOUGLAS CANDY COMPANY, a corporation, Employer, and American Mutual Liability Insurance Company, a corporation, Insurer, Appellants.**

**No. 22206.**

Kansas City Court of Appeals.

Missouri.

March 7, 1955.

Watkins & Watkins, St. Joseph, for appellants.

Leonard Johnson and Abe Goldman, St. Joseph, for respondent.

CAVE, Presiding Judge.

This action originated with the filing by respondent of a claim for compensation with the Division of Workmen's Compensation of the Department of Labor and Industrial Relations, hereafter referred to as the "commission". A hearing was held before a referee, and the award was in favor of the respondent for the sum of $2,321.30. The employer and insurer applied for review by the commission, and it affirmed the award of of the referee. An appeal was perfected to the Circuit Court of Buchanan County, which court affirmed the final award of the commission, and the employer and insurer perfected their appeal to this court.

At the beginning of the hearing before the referee and at the time counsel were interrogated by him regarding the issues on which the case was to be tried, it was admitted that the employer and employee were under the Workmen's Compensation Commission law; that the claimant was an employee of the employer; that her weekly wage was $32; that she had a "disc operation", and that as a result thereof, she had suffered a twenty per cent disability of the body as a whole; that the employer had not furnished any medical aid, but that the claimant had consulted and employed her own physicians; and that her total medical and hospital expenses were $614.90. However, the employer and insurer expressly denied that the claimant had sustained an injury by accident arising out of and in the course of her employment; also denied that the employer had received any notice of the alleged injury as required by Section 287.-420 RSMo 1949, V.A.M.S.; and denied liability for the medical and hospital expenses because claimant chose to select her own physician and surgeon at her own expense and without first notifying the employer and giving the employer an opportunity to furnish such treatment.

These three denials are the issues preserved and presented throughout this proceeding. The special findings of fact by the referee and the commission on these issues are: (1) that claimant "sustained an accident on December 15, 1952, arising out of and in the course of her employment with Douglas Candy Company, resulting in twenty (20) per cent permanent partial disability to the body as a whole * * *. We further find that notice of injury to employer by employee was late, but that employer and insurer were not prejudiced by failure to receive such notice. We further find that employee secured her own medical, surgical and hospital treatment and incurred expenses therefor as follows: * * * that employer and insurer are liable for same, and that the charges therefor are fair and reasonable; * * *."

We shall examine the evidence relative to the three issues contested.

Claimant testified that she had been employed by the Douglas Candy Company "off and on" for several years; that on Decem-

ber 15, 1952, she was working at a conveyor belt removing candy boxes therefrom, "and I took this box over and slipped and got down to my knees and I noticed a sharp pain through my back as I raised back up again"; that the box weighed 30 pounds; that she continued working after she slipped;

"Q. How did it seem to affect you after you had this fall to your knees? A. First it was a real sharp pain like —that cut you through the back—it hurt so bad I wasn't able to lift any more.

"Q. Did you complain to anybody or anything? A. I watched for the forelady and when she came I said, 'Bertha, I have to have some help,' and she said 'whats the matter' and I said, 'I can't lift any more, my back is killing me'—I said, 'It seemed like a sharp pain through my back'.

"Q. You continued working at Douglas Candy Company till when? A. Till the 23d day of December.

"Q. Did you do the same work after December 15th? A. No, I didn't.

"Q. What did you do after December 15th? A. I just did different jobs, —six or seven jobs a day. After, that she said, 'I'll put you on an easy job opening chocolate boxes'.

"Q. What is that? A. Thats the empty boxes—dozen or two dozen boxes —you open them up and get them ready.

"Q. Did you do any heavy work there again after December 15th? A. No, not till after I got called back in January—which I would call heavy. * * *

"Q. I mean at that time did you know you had received a compensable injury or not? A. No.

"Q. When did you first go to a doctor? A. The second of February. * * * Dr. Grant.

"Q. How long did he treat you? A. I would say for a little over a month.

"Q. On and after December 15th, did you have any home treatment? A. I had done everything. I used to sleep with the heating pad on my back and tried sitting in the bathtub—my sister suggested liniment and I went to her for I don't know how long.

"Q. State whether you were ever out of pain or not after that. A. I wasn't, no. * * * first it was in my back and finally down in my leg * * *

"Q. What did Dr. Grant do for you? A. The first time I went to him he gave me some pills to take for a couple of weeks and said, 'I want you to come back'—when I went back I told him it hadn't done any good and he gave me a closer examination and said, 'I will have to take some X-rays', and he said, 'It sounds to me like a disc * * *.'

"Q. Did you go to any other doctor? A. Yes * * * Dr. Buck * * * I went to see him about the middle of March * * *.

"Q. After you talked to Dr. Buck did you talk to anybody at Douglas Candy Company? A. Not until he told me I had to be operated on.

"Q. Then what did you do? A. I went to Douglas Candy Company and talked to Mr. Finkbinder. * * * The superintendent.

"Q. What did you tell Mr. Finkbinder? A. I told him I was having this operation and that before Christmas I had slipped up in the cooler and I was positive that that's what caused it up there—of course, you know he went on and asked me if I told the forelady * * * after that I went to the hospital * * * March 25th.

"Q. You were operated on in the hospital, when? A. Yes—the 26th. * * *

"Q. When you went to the hospital, did you give them the history of what happened? A. No.

"Q. You had a conversation with Dr. Buck? A. Yes.

"Q. And the result of that conversation—is that the reason you went down to the Douglas Candy Company? A. Yes."

On cross examination, claimant testified:

"Q. Mrs. Brown, the first time you ever told anybody at Douglas you claimed to have fallen was March 23, 1953? A. Thats right.

"Q. You did not tell Bertha Cooley you had fallen? A. I don't recall that. I did tell her I could not lift any more.

"Q. What you told her was you had a backache? A. No, I said 'my back is killing me'—was the very words.

"Q. You didn't tell her anything about having slipped or fallen? A. I don't recall it. She told me then she was going to help me. * * * So she done all the lifting * * * and she put me on an easy job opening up empty boxes. * * *

"Q. Do you now say you * * * did or did not tell Bertha Cooley you had slipped or fallen? A. All I said to her was what I said in my deposition— that my back was killing me * * *. At the time I didn't know how serious was my injury.

"Q. You did not say you had slipped or fallen? A. No.

"Q. Where were you working when you claim you fell? A. In the cooler. * * *

"Q. You were inside the cooler? A. Yes.

"Q. How long had you been there? A. All morning. * * *

"Q. Were you working alone at the time you claim this happened? A. Yes.

"Q. Nobody with you? A. No."

Claimant testified that she mostly did "time work"; that she would be transferred from one type of work to another kind of work, sometimes several times a day. She admitted that she worked for Douglas Candy Company several days in January, 1953, and that she was laid off at that time because work was slack and not because of any complaint she made of disability or physical inability to work.

Plaintiff's husband testified that just before Christmas, 1952, he noticed that his wife had "slowed down. She is not like she was;" that one evening when he came home he found her in bed with the hot pad at her back; that she limped, lost weight, and complained about pain in her back and legs and "didn't seem to have any pep—she couldn't sit still. * * * She kept hollering about her legs, it seemed like, more than her back. I have had her call me to rub her back with Omega oil but it didn't seem to do any good."

Fern Harris testified that she worked at the Douglas Candy factory at the time claimant did; that about December 15, 1952, she and claimant, together with others, were lifting candy boxes from the conveyor belt and placing them on the "skids" to be rolled away; that she did not see claimant have an accident, but about that time she noticed that claimant "couldn't do the work we were doing—she seemed to kind of drag herself— it was hard for her to lift the candy we lifted * * *."

Connie Olvera testified that she was a sister-in-law of claimant and had noticed a change in her condition shortly before Christmas, 1952; that she had rubbed liniment on her back and had put hot pads on it around Christmas time; that prior to the latter part of December, 1952, claimant had been apparently well and active.

Claimant offered no medical testimony relative to the cause of her back condition which required surgery, or whether that condition was caused or could have been caused by her alleged slipping and falling, or whether or not her condition was aggravated by continuing to work without

notifying the employer. No doctors testified at all. The appellants did admit claimant underwent surgery and the expense thereof, but they specifically denied the injury was the result of an accident growing out of her employment at the candy factory.

The employer introduced evidence to the effect that its employment records showed that claimant had not worked "in the cooler" on December 15th, or at any time within a week prior or subsequent to that date. It also introduced the hospital records, and the history given by claimant is as follows: "Repeated attacks of low back pain since January, 1953, has not been free of pain. Had pain down rt. lg. Some cramping in rt. calf. Cough increases the pain." There was no report of an accident, and claimant admits she gave none, at the hospital. The doctors found and removed a "herniated nucleous pulposus". There is nothing in the hospital record to indicate what caused this condition, **or** any medical evidence on that issue.

Appellants contend that since it is conceded that claimant did not give written notice of the time, place and nature of her injury, as required by Section 287.420, it became her burden to offer evidence of "good cause" for failure to give such notice, or "that the employer was not prejudiced by failure to receive such notice * * *"; and that the commission erred in finding that the employer *was not prejudiced* by such failure to give notice, because there was no evidence to support such a finding. Section 287.420 provides: "No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the *injury,* and the name and address of the person injured, shall have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the *accident,* unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive such notice. * * *"

It is the well established law in this state that the requirement of written notice is a reasonable provision for the benefit of the employer, but the giving of such notice is not an unconditional prerequisite to recovery. The purpose of the statute is designed to give the employer timely opportunity to investigate the facts pertaining to whether an accident occurred, and if so, to give the employee medical attention in order to minimize the disability. However, if the employer had actual notice or knowledge of the accident, then he could not be prejudiced by failure to receive written notice; or if there is an affirmative showing of "good cause" for failure to give the notice, then the claimant will not be denied relief. Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S.W. 2d 264, 94 A.L.R. 751; Schrabauer v. Schneider Engraving Product, Inc., 224 Mo. App. 304, 25 S.W.2d 529; McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W. 2d 911, 914; Beatty v. Chandeysson Electric Co., 238 Mo.App. 868, 190 S.W.2d 648; Conn v. Chestnut Street Realty Co., 235 Mo.App. 309, 133 S.W.2d 1056; Johnson v. Scott County Milling Co., Mo.App., 101 S.W.2d 123; Reeves v. Fraser-Brace Engineering Co., 237 Mo.App. 473, 172 S.W.2d 274, 145 A.L.R. 1263.

From the record it is clear that no written notice of the *accident* was given the employer at any time and that it had no oral notice thereof until March 23, 1953, more than three months after it is claimed the accident occurred.

The above cases support the proposition that it is "good cause" for failure to give notice within thirty days if the injury did not appear until more than thirty days after the accident. This is based on the theory that the accident was apparently trivial or the condition produced by the accident is a latent one and not reasonably discoverable. In the instant case, the claimant testified that immediately upon slipping and falling, she suffered a severe pain in her back and was unable to continue the type of work she had been

doing; that she continued to suffer pain in her back and legs and applied many home remedies to relieve such condition. It is true she did not know that she had injured a disc in her spinal column, if she did, but she did know that she had painfully injured her back and was in constant pain until the operation. Under such circumstances, we believe it became her duty to promptly report the *accident* to her employer. Consequently, the failure to give notice cannot be excused on the ground of "good cause"; and neither the referee or the commission made such a finding.

Did the commission err in excusing the failure to give timely notice by finding that the *employer was not prejudiced thereby?* This poses the question, which party had the burden of proof of prejudice or lack of prejudice?

There was no evidence offered by the claimant or by the employer on the question whether the employer had been *prejudiced* by failure to receive notice of the accident. In fact, as stated above, there is no medical evidence that the injury to the disc resulted from claimant's fall, or whether the condition was aggravated by continuing to work.

Claimant contends that the burden of proof on the issue whether prejudice did or did not result was upon the employer, and the employer contends the contrary. If the burden of proof on that issue was on the employer, then there is no evidence that it was prejudiced for failure to receive notice of the injury and it cannot complain. But if the burden was on claimant, since no written notice was given and no "good cause" was shown, then she failed to meet that burden because there is no evidence on the subject, and no facts from which such an inference can be drawn.

As has been stated, the purpose of notice of an *accident* is dual; first, to enable the employer to provide immediate medical diagnosis and treatment with the view of minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury, and thereby protect the employer against claims too old to be successfully investigated and defended.

We have found no Missouri case clearly and specifically passing on this question of the burden of proof. In Schrabauer v. Schneider Engraving Product, Inc., supra, the St. Louis Court of Appeals held that where the claimant shows that the employer had actual knowledge or notice of the injury, he thereby makes a prima facie showing of want of prejudice to the employer, and that thereupon the burden shifts to the latter to prove that, in spite of such actual notice, he has still been prejudiced by the failure to have received a written notice. The Schrabauer case was disapproved on another point by the supreme court in Wheeler v. Missouri Pacific R. Co., 328 Mo. 888, 42 S.W.2d 579, but the court specifically approved the language of the Schrabauer case above referred to. In Newman v. Rice-Stix Dry Goods Co., supra, the court said, 73 S.W.2d 267: "The commission is empowered to award compensation though written notice has not been given if it finds there was *good cause* for not giving it *or* that the employer *was not prejudiced* by failure to receive it. *In order to determine whether or not the employer was prejudiced by such failure, the commission would have to hear evidence on the point.*" (Italics supplied.)

In Volume 2, Larson's Workmen's Compensation Law, page 259, in discussing the question of notice, it is said: "More particularly, once the record shows that the required notice has not been given, the fatal effect of this showing must be offset by definite findings showing the kind of excuse or lack of prejudice which will satisfy the statute. The commission cannot remain silent on the issue of excuse or prejudice and leave appellate courts to infer that some excuse must have been found. *The burden, of course, is on the employee to prove facts establishing an excuse once a failure to comply with the statute has been shown.*" (Italics supplied.) This question was discussed in Bloomfield v. November, 223 N.Y. 265, 119 N.E. 705, 706, where the

court said: "The Legislature has made it the rule that written notice of injury shall be given within ten days after disability. As we said upon the former appeal, prompt service of such notice is required 'so as to give an employer the opportunity to investigate the circumstances of the claim. This requirement ought not to be treated as a mere formality or be dispensed with as a matter of course whenever there has been a failure to serve such notice.' From the fact that the Legislature has required such notice to be given, the presumption reasonably arises that the opportunity for prompt investigation of an alleged injury is one of value. The statute, it is true, allows the failure to give this notice to be excused if it appears that the employer and the insurance company have not been prejudiced by such failure, *but on principle as well as on authority the burden must rest upon the claimant who has been guilty of such default to supply the evidence and secure a finding that no such prejudice has resulted.*" (Italics supplied.)

In 58 Am.Jur., page 833, Sec. 386, it is said: "The burden is upon the applicant to show that notice of injury was given within the proper time, or, if there was delay in giving or failure to give the notice, to show that such delay or failure was due to mistake or other reasonable cause, that the employer or his representative had knowledge thereof, or that the want of notice has not prejudiced the employer."

■ We think a reasonable construction of Section 287.420, supra, fixes the burden of proof on a claimant to produce competent and substantial evidence that the statutory notice was given or proof of a statutory excuse for not having given notice of the *accident*. Note that the section provides, "No proceedings for compensation * * * shall be maintained unless written notice * * * shall have been given to the employer * * * but not later than thirty days after the *accident* * * *", unless the commission shall find there was good cause for failure to give such notice or that the employer was not prejudiced by failure to receive the same. If the proceedings for compensation cannot be maintained by claimant unless some one of the provisions of this section has been complied with, then such compliance becomes an essential element of claimant's case and there must be evidence to support a finding of the commission on such an issue.

■ We hold that the burden of proving that notice of the *accident* was given as required by Section 287.420, or a legal excuse for not giving such notice, rests on the claimant; and we also hold that there is no substantial evidence to support the finding of the commission that the appellants were not prejudiced thereby.

■ Claimant argues that it was not necessary for the referee or the industrial commission to make a special finding of fact as to the existence of "good cause" or of "lack of prejudice" for her failure to give notice of the accident. Citing, Buckner v. Quick Seal, Inc., 233 Mo.App. 273, 118 S.W.2d 100; and State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S.W.2d 1008. The facts in those cases distinguish them from the instant case. It was held that the evidence was sufficient to show "good cause" for failure to give the notice. Those cases also held that the general award of the commission had the force and effect of a jury verdict. However, that is no longer true since the adoption of Section 22, Article V of the Constitution of 1945, V.A.M.S. The findings and award of the commission are now regarded as having more nearly the force and effect of a judgment in a non-jury case, review of which is provided by Section 510.310 (4); Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55, 62; Rogers v. Reorganization Investment Co., Mo.App., 200 S.W.2d 563, 567. The rule now is that a reviewing court may not substitute its judgment on the evidence for that of the commission, but it is authorized to determine whether such tribunal could have reasonably made its findings and reached its result, upon con-

sideration of all the evidence before it, and to set aside decisions clearly contrary to the overwhelming weight of the evidence or where there is no evidence to support the finding of an essential fact. Thacker v. Massman Construction Co., Mo., 247 S.W.2d 623.

The language in some of the cases leaves the impression that the limitation of time for giving notice of the *accident* as provided in Section 287.420 should be determined on the same theory and basis as the limitation on the time for *filing a claim* before the commission, within one year after *the injury,* as provided in Section 287.430. There is a well marked distinction between the word "accident" and the word "injury", the latter being the result of the *accident.* See the definition of "accident", Section 287.020 (2), and "injury", found in Section 287.020 (3). See also, Wheeler v. Missouri Pacific R. Co., 328 Mo. 888, 42 S.W.2d 579; Cleveland v. Laclede Christy Clay Products Co., Mo. App., 129 S.W.2d 12. The time for giving notice of the *accident* is controlled by Section 287.420; and the time for *filing a claim* for injury is controlled by Section 287.430. The cases should be read with this distinction in mind.

It is our conclusion that claimant is not entitled to maintain her claim for compensation, because she did not produce any evidence which would excuse her failure to comply with the giving of notice as required in Section 287.420; and that the commission erred in making its award based upon the fact that the appellants were not prejudiced by such failure of the claimant. Other questions raised in the briefs need not be discussed.

It follows that the judgment of the circuit court should be reversed and the cause remanded with directions to said court to enter judgment reversing the award of the commission and remanding the cause to the commission with directions to dismiss plaintiff's claim.

All concur.