## MICHAEL DUFFY'S CASE.

Suffolk.   December 6, 1916. — February 28, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act,* Loss of vision, Notice. *Words,* "As soon as practicable."

In a claim under the workmen's compensation act a finding of the Industrial Accident Board, that the employee was totally incapacitated by the loss of vision in one of his eyes, is warranted by evidence that he previously had lost the sight of

his other eye and by medical testimony that "for practical work [he] has no sight; he can do anything that a blind man can do." Following *Braconnier's Case,* 223 Mass. 273.

In a claim under the workmen's compensation act a finding of the Industrial Accident Board, that the employee's normal vision in his injured eye was reduced to one tenth, so that he is entitled to special compensation under St. 1914, c. 708, § 6 (*b*), is warranted by the testimony of a medical expert, in answer to the question, "To what per cent is the sight of his eye reduced?", "I could not reckon it in per cent; it would be so small — less than one per cent."

In a claim under the workmen's compensation act for compensation by an employee, who already had lost the sight of one eye, for loss of vision in his remaining eye, it appeared that the immediate effect of the injury to the employee was a wrench in the back of his neck and a pain in his eye, that he was in bed for five days suffering great pain "through his head," that then the pain stopped and he worked for three days, that the next week he worked for five days and that "this last week his eye seemed to be getting worse," that the next day was Sunday and that he went to church and could not see who the priest was and he knew he "would have to quit work," that five days later, which was twenty days after his injury, he gave notice in writing of his injury, that on Monday of the fifth week after his injury he went to the hospital and first felt his sight was impaired, that he could not see or read any more, and that "the sight did not go altogether until the Friday of this fifth week." The Industrial Accident Board made a finding "that the notice given, under the circumstances as they appear in this case, complies with the statutory requirement that such notice be given as soon as practicable after the occurrence of the injury." *Held,* that on the facts stated above this finding was warranted.

In the provision in regard to giving notice of an injury for which compensation is to be claimed under the workmen's compensation act, the words "as soon as practicable after the happening thereof," as used in St. 1911, c. 751, Part II, § 15, import action according to the circumstances.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board awarding to Michael Duffy specific compensation at the rate of $10 per week for a period of fifty weeks on account of the loss of vision in his left eye; and total incapacity compensation at the weekly rate of $10 per week dating from March 10, 1916, for a period of four hundred weeks, the claim and the award having been made against the town of Brookline under St. 1913, c. 807.

In the Superior Court the case was heard by *Jenney,* J. The findings of the Industrial Accident Board are stated in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board; and the town of Brookline appealed.

The provision in the workmen's compensation act for special compensation for loss of vision in one eye is contained in St. 1911,

c. 751, Part II, § 11 (*b*), St. 1912, c. 571, § 2, St. 1913, c. 445, § 1 (*b*), St. 1914, c. 708, § 6 (*b*). In its amended form that provision is as follows: "For the loss by severance of either hand, at or above the wrist, of either foot at or above the ankle, or the reduction to one tenth of normal vision in either eye with glasses, sixty-six and two thirds per cent of the average weekly wages of the injured person, for each hand or foot so severed, but not more than ten dollars nor less than four dollars a week for a period of fifty weeks."

The provisions of the workmen's compensation act in regard to notice of the injury are in part contained in St. 1911, c. 751, Part II, §§ 15, 16, as amended by St. 1912, c. 172, which are as follows:

"Section 15. No proceedings for compensation for an injury under this act shall be maintained unless a notice of the injury shall have been given to the association or subscriber as soon as practicable after the happening thereof, and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, in case of the death of the employee, or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

"Section 16 [as amended]. The said notice shall be in writing, and shall state in ordinary language the time, place and cause of the injury; and shall be signed by the person injured, or by a person in his behalf, or, in the event of his death, by his legal representative or by a person in his behalf. Any form of written communication signed by the person so injured, or by some person in his behalf, or in the event of his death by his legal representative, which contains the information that the person has so been injured, giving the time, place and cause of the injury, shall be considered a sufficient notice."

*E. A. McEttrick*, for the town of Brookline.

*S. Bishop*, for the employee.

PIERCE, J. The finding of the Industrial Accident Board, that Michael Duffy was an employee of the town of Brookline at the time of his injury, is not controverted; that he was injured, is supported by his uncontradicted testimony that, while he was engaged in loading ashes, "he and Hart threw the barrel as high as they possibly could, but the teamster did not happen to catch hold

as he did the other barrels, so the barrel slipped down kind of sudden and came almost to the ground before they could steady it, but it did not strike him because they had their hands on it. The barrel was to the left of him and when it slipped he felt a wrench in the back of his neck;" that there was an injury to his left eye might have been deduced from his testimony that with the wrench in the back of his neck "a pain seemed to start in the muscle at the back of his neck, going through his head and out of his eye. . . . The pain seemed to go through his head with so much force that he thought it would throw his eye out," and by the medical testimony that the strain described by the employee would be an adequate cause for the injury to the eye; that the accident happened February 25, 1916, this is sustained by the testimony of the employee, corroborated by the records of the town of Brookline which show that day as the only day for which the employee was paid half time.

The finding, that the employee was totally incapacitated for work by reason of the injury, is supported by the fact that the other eye was lost as the result of a previous injury, and by the medical testimony that "for practical work, Mr. Duffy has no sight; he can do anything that a blind man can do." *Braconnier's Case,* 223 Mass. 273. That the normal vision was reduced to one tenth, might have been found from the testimony of the medical expert, "I could not reckon it in per cent; it would be so small — less than one per cent" in response to the question "What per cent would you say that [there] is in this eye? To what per cent is the sight of his eye reduced?" Tha the was entitled to weekly payments of $10 from March 10, 1916, could be found upon conflicting testimony as to the days of the employee's actual service after March 10, and by the agreement that the average weekly wages were $15.

A chronological statement of facts discloses that the injury to the employee, from which the loss of his eye later followed as a natural consequence, happened February 25, 1916; that the employee was in bed five days suffering great pain "through his head;" that the pain stopped on March 1; that he worked without pain March 2, 3 and 4; that the next week he worked March 7, 8, 9 and 10; that during "this last week his eye seemed to be getting worse;" that a newspaper looked as though there were dirt on

it; that March 10 he went to see Dr. McKenzie; that March 11, Saturday, he worked; that March 12, as he testified, "I went to church and the priest went up to the pulpit to preach and I could not tell who it was, and I told my wife. I knew I would have to quit work and I sent my wife up to the Hall on Monday morning;" that March 17, a written notice of the injury was given; that he "went to the hospital Monday, the fifth week;" that he first felt his sight was impaired, that he could not see or read any more, "Friday, the fifth week; . . . the sight did not go altogether until the Friday of this fifth week."

The question presented is, whether there is any evidence to support the finding of the Industrial Accident Board "that the notice given, under the circumstances as they appear in this case, complies with the statutory requirement that such notice be given as soon as practicable after the occurrence of the injury." St. 1911, c. 751, Part II, § 15, provides "No proceedings for compensation for an injury under this act shall be maintained unless a notice of the injury shall have been given to the association or subscriber as soon as practicable after the happening thereof." The employee does not claim that the association, subscriber or agent had knowledge of the injury. And the provision, St. 1912, c. 571, § 5, that "The failure to make a claim within the period prescribed by section fifteen [*supra*] shall not be a bar to the maintenance of proceedings under this act if it is found that it was occasioned by mistake or other reasonable cause," cannot be applied to the failure to give the statutory notice. The words "as soon as practicable" import the necessity of knowledge of the attendant facts, in order that there may be a compliance with the statutory direction that the notice "shall state in ordinary language the time, place and cause of the injury." St. 1911, c. 751, Part II, § 16, as amended by St. 1912, c. 172. A trivial scratch or bruise of the finger ignorantly placed in contact with an infectious substance, may be followed by an insidious and slow development of a most terrible disease, the nature and peril of which may be entirely unknown to the injured employee. The injury may take place in the absence of witnesses and be of a character temporarily to disable the employee in the use of his understanding; and it may be and perhaps usually is of such character that its nature and degree is known or may be determined with reasonable certainty. It is obvious that

feasibility of giving notice forthwith, immediately, speedily, or with reasonable diligence, must depend on the facts of each case. We are of opinion that the words "as soon as practicable after the happening thereof," as used in the statute, import action according to the circumstances.

Although the case at bar is close upon this point, we cannot say as a matter of law that there was no evidence to support the finding. *Herrick's Case,* 217 Mass. 111. *Nickerson's Case,* 218 Mass. 158. *Kenney's Case,* 222 Mass. 401. *Von Ette's Case,* 223 Mass. 56.

*Decree affirmed.*