EVELYN REEVES, RESPONDENT, v. FRASER-BRACE ENGINEERING COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, APPELLANTS.— 172 S. W. (2d) 274.

St. Louis Court of Appeals. Opinion filed June 8, 1943.

Appellants' Motion for Rehearing Denied June 25, 1943.

*John F. Evans* for appellants.

476

*Tyree C. Derrick* for respondent.

ANDERSON, J.—This is an appeal by an employer and an insurer from a judgment of the circuit court, affirming an award of the Mis-

souri Workmen's Compensation Commission·in favor of respondent, widow and dependent of Frank Reeves, an employee at the time of his death of appellant Fraser-Brace Engineering Company.

Respondent's claim, filed with the Commission, alleged that Frank Reeves, claimant's husband, died August 5, 1941, as a result of an ·accident which he sustained on July 21, 1941, when he stepped on a nail in the course of his employment at the T.N.T. plant at Weldon Springs, Missouri, the immediate cause of death being tetanus, which developed following said accident. The Commission made an award in favor of claimant, and the circuit court affirmed the award.

In this court, appellants contend, in their first assignment of error, that there was not sufficient competent evidence to support the finding and award that Frank Reeves died as a result of an accident arising out of and in the course of his employment. This contention necessitates a review of the evidence, stated in its most favorable. aspect to to respondent's case.

On July 21, 1941, and for some time prior thereto, Frank Reeves had been employed by the Fraser-Brace Engineering Company as a carpenter's helper at the Weldon Springs T. N. T. plant in St. Charles County. On the day of the alleged accident, he was engaged in digging holes for concrete footings. He had left home that morning about 6 o'clock, and had ridden to work in an automobile with several other workmen.

The claimant, Mrs. Reeves, testified that on the day before, which was a Sunday, while her husband sat around the house reading the papers, she noticed his feet, and saw "no marks or scars or anything of that kind" on them. She further testified that when he came home from work on July 21st she saw him limping as he came through the hall, and noticed he had a tense facial expression. Mrs. Dreyling, a nurse, who was present at the time, asked Mr. Reeves what had happened, and after receiving his reply, examined his foot and saw on it a mark which she described as "a little dry red spot," which looked as if dried blood were around it. The skin was broken, but the wound, which was in the center of the heel of the left foot, had not bled much. She told him to wash the wound carefully, to ·put iodine on it, and to be sure to get the iodine inside the wound. Mr. Rees, however, did nothing to his foot other than to put alcohol·on it.

The record shows that Reeves returned to work the following day, and worked everyday or night through the next Saturday, changing to the night shift on Wednesday, July 23rd. On the following Sunday morning he came home from work about 9 o'clock, dressed, and went to church. After returning from church, he went to bed. About 2:30 in the afternoon,·respondent heard him in the kitchen. He sounded as though he were choking. When he choked again, she and Mrs. Dreyling went into the kitchen, and Mrs. Dreyling beat him on the back. In a few minutes he was all right. At the time he was extremely nervous, and said he could not swallow. About a half hour

later, Mrs. Dreyling suggested that a doctor be called, and claimant called Dr. Douglas V. Reese, who came and prescribed medicine for him. On Monday afternoon, respondent took her husband to Dr. Reese's office, and Dr. Reese sent him to Dr. Bernard McMahon, a throat specialist. Dr. McMahon sent him to Barnes Hospital on Tuesday morning for an examination.

Dr. McMahon testified that an X-ray examination revealed a complete obstruction of his esophagus at the level behind the larynx. He stated that he performed an esophagoscopy on Wednesday, July 30th, which consisted in introducing a tube into the esophagus in order to see what was causing the constriction. This examination revealed no pathology and no inflammation, except a slight thickening of the membrane, which might be found in any man's throat. The patient still could not swallow, and they inserted a nasal feeding tube which was kept in for several days. On August 3rd, there was a marked rigidity of the neck, with retraction of the head backward, but no headache, nausea, or vomiting. The thought of tetanus then came into the picture, and the doctors questioned the patient about injury. He stated he had not had any, except to his hand a few months before, and a little injury to his foot, which he stated had healed. Dr. McMahon, without objection, testified: "He said it was healed; and he did not think much of it, and he said he injured his foot and stepped on a nail and he did not think much of that. He said he stepped on a nail at work. It was that morning I spoke to Mrs. Reeves quite a long time because we had a diagnosis of hysteria to rule out besides. We went into the background and the nail history, the injury to his foot. I talked to Mrs. Reeves to get her knowledge of the injury to his heel."

Upon further questioning the doctor stated that Mr. Reeves gave the impression that this accident had occurred three or four weeks previously.

The doctor further testified that at this time the patient began to show symptoms of tetanus. Finally, everything else that had been suspected was ruled out, leaving only the matter of questionable tetanus. The doctor reinserted the tube; and the patient was kept quiet, but on the following day Dr. McMahon was notified that the patient was getting definitely worse. The doctor had Dr. Myers, the physician on service at the time, see the patient, and then after they had a discussion, Dr. Myers administered tetanus antitoxin. The patient died of tetanus on August 5, 1941.

Dr. John J. Hammond, who saw Mr. Reeves before he died for the purpose of taking X-ray pictures of him, stated that Reeves had a nail puncture wound in his foot.

Dr. John J. Connor, Coroner's physician, testified that he made a post mortem examination on the body of Reeves, and found a puncture wound, approximately a quarter of an inch deep, in the left heel; that that was the only puncture Reeves had. In the opinion

of Dr. Connor, Frank Reeves contracted tetanus from the puncture wound in his left heel.

Herschell Logan, foreman for Fraser-Brace Engineering Co., under whom Reeves worked while on the day shift, testified, without objection, that on Saturday morning he had a conversation with Reeves. He stated:

"At that time we had another conversation. I don't know exactly how he brought it up. I don't remember exactly whether he limped or whether he had his shoe untied, but he did make the remark that he stepped on a nail. I asked, 'Did you go to the doctor?' or 'Are you going to the doctor?' The best I remember, I understood him to say, 'I am going to the doctor.' "

John Lyons testified that on July 21, 1941, he was working as a carpenter's helper at the Weldon Springs plant, putting up forms, knocking them down, and throwing them on the side. He further stated that when the workmen went in and out from work they walked over them, and that there was a lot of lumber there with nails in it.

DeWard Flynn, called by appellants, testified that he worked at the Weldon Springs plant from July 21, 1941, to July 27, 1941, on the same crew with Frank Reeves, and that "There were plenty of opportunities to step on nails, boards with nails in them, and everything of that kind."

We believe that the facts which we have detailed constitute substantial evidence from which a reasonable inference can be drawn that the employee in the case at bar died as a result of an accident, arising out of and in the course of his employment. [Fletcher v. Sinclair Iron Co., Ltd., 21 B. W. C. C. 62.]

Appellants further argue that while there is a bare possibility that the employee might have stepped on a nail while at work, an inference can also be drawn that he sustained the accident away from work.

If this were true, and if the latter inference possessed an equal degree of probability with the one contended for by respondent, we would be compelled to hold that respondent failed to prove her case, for in such a situation the choice between the two inferences would rest in conjecture. But, where the triers of fact may reasonably find, after comparing and balancing probabilities, that the inference in favor of the claimant is the more probable inference, then claimant has met her burden, and we are powerless to disturb such finding.

In our judgment, the probability of the injury having been sustained while deceased was at work outweighs the probability, if such there be, of its having been sustained in any other way. At least, the Commission was justified in so finding. We are led to this belief from a consideration of the testimony given by the claimant; the testimony of the nurse who examined the deceased's foot after he returned from work on July 21st; the testimony of the autopsy surgeon who, found a nail puncture in his heel; the evidence disclosing the fact that deceased worked in a place where he was exposed to the risk of

stepping on nails; the nature of the disease from which he died; the hearsay declarations made by deceased to his doctor and foreman; and the lack of any evidence of a substantial character pointing to any other explanation.

By their answer to the claim for compensation, appellants averred:

"Employer and insurer further state that employee failed to give employer written notice or any notice of said alleged accident as soon as practicable after the happening thereof, in violation of Section 3726, R. S. Mo. 1939; that said failure was prejudicial for the reason that if said notice had been given antitetanus serum would have been administered to said employee and his life thereby saved."

The Commission found "that the employer had actual notice of such accident within 30 days thereafter, and although notice thereof was not given to employer as soon as practicable after said accident, the employer was not prejudiced by its failure to receive such notice at an earlier date."

In this court, appellants contend that there was not sufficient competent evidence to support the foregoing finding, for the evidence shows without dispute that had Reeves reported the accident, he would have received antitetanus serum, which in all probability would have saved his life.

In support of this defense, defendants had introduced evidence to show that notices were posted around the premises, calling upon employees to report all injuries no matter how small to the foremen. Upon such a report being made by any employee, the practice was for the foreman to give such employee an accident report slip, and to send him to the first aid station or to the emergency hospital maintained on the premises for medical attention. Reeves, however, never made a report of his alleged accident.

In order that the employees might obtain prompt medical attention, the employer maintained a first aid station about a quarter of a mile from the area where Reeves was working, and an emergency hospital at the entrance gate. This hospital was staffed with train nurses and several physicians, and a licensed physician was always on duty between the hours of 7 A. M. and 10 or 11 P. M. Standing orders were in existence for the administration of antitetanus serum in every case of puncture or dirt wounds, and a fresh supply of antitetanus serum was always kept on hand. From ten to twenty-five antitetanus treatments were given each week, and no known cases of tetanus had ever developed.

The medical testimony tended to show that antitetanus prophylaxis should be given in cases such as the one in question, and that if administered within ten hours after injury, the majority of patients would not develop tetanus. Medical opinions as to the effectiveness of the serum ranged from "majority of cases" to "ninety per cent."

On this phase of the case we encounter no difficulty whatsoever in sustaining the award of the Commission. The statute, Section 3726,

Revised Statutes Missouri, 1939, (R. S. A., sec. 3726), provides that "No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, shall have been given to the employer *as soon as practicable* after the happening thereof but not later than thirty days after the accident, unless the commission shall find that there *was good cause for failure to give such notice*, or that the employer *was not prejudiced by failure to receive such notice.*" (Italics ours.)

As heretofore stated, the Commission found that notice of accident under this statute was not given as soon as practicable, but further found that no prejudice to appellants resulted from such failure.

Now, in passing upon the question of whether or not sufficient evidence was produced to support this finding, it is essential that we determine from the evidence when the notice should have been given, as the question of prejudice cannot be considered except with reference to the date on which appellants should have received notice of the accident.

According to our understanding of the law, the obligation to give notice as soon as practicable depends largely upon the character of the accident and the state and knowledge of the person whose duty it is to give the notice. Such a person cannot be expected to give notice until he realizes, or should realize, that his condition or disability is due to an accidental injury which entitles him to claim compensation under the Act. "As soon as practicable" means not earlier than a time when the workmen has realized, by reason of the prognosis that is brought to his attention, that the injury he has suffered is one which would justify his making a claim under the Act. [Fenton v. Owners of S. S. Kelvin, 18 B. W. C. C. 330; Webster v. Cohen Bros., 1913, 6 B. W. C. C. 92.]

What, briefly, are the facts in the case before us? The deceased, a carpenter's helper, accidentally stepped upon a nail, causing a puncture in the skin on his heel. In itself, the occurrence was a trivial affair. It did not incapacitate Reeves in the least, and at the time he had no cause to believe that by reason of his having stepped on the nail he would become disabled and have a claim under the Act in respect to the injury. The danger here was latent, and not one reasonably to be expected to exist, for in the vast majority of such cases no serious results follow from wounds so slight. One should not be expected to anticipate the unusual. Under the circumstances, it appears plain to us that there was no evidence in the case to justify a belief that notice should have been given at once after receiving the wound.

The condition of Reeves remained unchanged until the afternoon of Sunday, July 27th, when he had a choking spell, while in the kitchen of his home, and found himself unable to swallow. This experience was the first evidence he had of the existence of the disease which later caused his death. But, from the evidence the only inference

that could be drawn is that both he and his wife were entirely ignorant of the connection between the accident and his condition. In fact, the medical men who treated him did not connect his condition with the accident until the day before his death, when they finally diagnosed his ailment as tetanus. At that time deceased was too ill to attend to his affairs, so that it would be absurd to hold that it was practicable for him to have given notice under the statute at that time, even if there were evidence that he had been informed of the nature of his illness.

We find that prior to the death of Reeves, he was under no duty to give the notice, for the practicable time for giving the notice had not yet arrived. We are not without authority in support of this view. We will, however, not attempt to review all of the cases which support our viewpoint, for that would unduly lengthen this opinion. One decision squarely in point, though, is Ellison v. Calvert & Heald, 29 B. W. C. C. 323, a decision by the House of Lords.

In that case a workman, on November 23rd, struck the back of his head, causing a slight wound, which he did not consider serious. He continued to work until November 26th, when he became ill. His doctor diagnosed his condition as influenza. On December 7th he was sent to a hospital, suffering from pneumonia and septic meningitis, and on December 10th he died. The post mortem established that the scalp wound was the source of his illness, and notice of injury, under a statute similar to ours, was given on January 22nd, more than a month after the death. The trial court found that although the employer was prejudiced by failure to give the notice, such failure was excused on the ground that there was reasonable cause for such failure. The case finally reached the House of Lords, who affirmed the finding and judgment, and who held that there was evidence on which the trial judge could have found either that the notice of accident had been given as soon as practicable, or that the delay was occasioned by reasonable cause. The principal opinion, rendered by Lord Atkin, after holding that a case had been made on the issue of accident, held:

"That is not the only point in the case, because the employers raised the objection that here there was no notice given, and notice, by the statute, has got to be given as soon as practicable unless it is excused by the provisos, one of which is 'that such want, defect or inaccuracy' in the notice 'was occasioned by mistake, absence from the United Kingdom, or other reasonable cause.' The learned county court judge in his judgment came to the conclusion that up to November 26 the workman had no reason to suppose that the injury was one from which a claim against his employer would be likely to arise, and if that is so the occasion did not arise under which he was obliged to give notice. I think the right view is that in those circumstances and until that time had expired notice need not be given because it is not right to say that the practicable time for giving it has arisen. The learned judge, I think, preferred to assume that there was a time for giving notice, perhaps from the very beginning, but there was reason-

able cause for not giving it because the workman did not realize that it was an injury which was likely to give rise to a claim for compensation. But whichever way that is put, there appears to me to be ample evidence upon which the learned judge could so find. After November 27 and including November 27, and, I think from the doctor's evidence, including part of November 26, the learned judge came to the conclusion that the man was in such a state of health that he could not be expected to attend to the business of giving notice. That, again, is a pure question of fact upon which there is ample evidence to support the learned judge's finding.''

It will be observed that Lord Atkin stated that it made no difference whether the failure to give notice was excused on the theory that the practicable time for giving notice had not arrived prior to November 26th, or on the theory that reasonable grounds existed for such failure. The same may be said with respect to the case at bar. Our statute expressly provides that the failure to give notice will be excused if the commission finds that there was *"good cause for failure to give such notice."* (Italics ours.) Under this provision, it would clearly appear that if a workman has an accident trivial in its nature, and at the time honestly believes that nothing serious has happened to him, good cause for failure to give notice under the statute exists. Therefore, under the facts in this case, it is not necessary to go further than to say that the failure of Reeves to give notice was excused either on the theory that he died before the practicable time for giving notice had arrived, or that he had good cause for failure to give it, although it would seem that the view preferred by Lord Atkin is perhaps the more logical. However, as a practical matter, it makes no difference which view is adopted, because by the application of either, the same result is obtained. This is demonstrated by the opinions in White v. Ford Motor Co., 1918 W. C. & Ins. Rep. 25, 10 B. W. C. C. 334, where the same result was reached by two of the judges who participated in the case, although each adopted a different theory in reaching that result.

In that case, a workman's finger was struck. The injury appeared trivial. Three days later, the workman had to stop work, and the doctor attributed his incapacity to influenza, though soon afterwards he attributed the incapacity to blood poisoning. The workman wrote a letter to his employer in October, stating that he was suffering from blood poisoning, but not attributing the blood poisoning to the accident. In January, a new doctor was employed. He traced the blood poisoning to the accident. Notice was then given to the employer. The lower court found that notice had been given as soon as practicable, and the court, in his findings, stated that if the notice had not been given as soon as practicable, there was reasonable cause for the delay. The Court of Appeal affirmed. Lord Cozens-Hardy, M. R., in delivering his opinion in the case, said:

''The point arising in this case is not without difficulty. It is a case in which the alleged accident was very trivial at the time, but led to blood-poisoning. It is plain that the man was not aware of the mischief until he saw his doctor. His doctor thought so little of it, that he actually gave a certificate to the effect that the applicant was incapable of work by reason of influenza. Then another certificate was required, and he certified that the man was suffering from 'septic cellulitis of the arm, which ended in suppuration.' Unfortunately, the doctor who gave these certificates died in January, and we cannot go any further into the question of what he knew. But this we do know, that there is no suggestion of any sort or kind as to the cause of the blood-poisoning except the entry of this part of the screw-head into the man's little finger, followed by swelling of the arm.

''It was not until January 5 that formal notice was given. It was not until some weeks after the accident happened that the man had any idea that his injury was due to the accident. On October 24 he dictated a letter to the curate, who wrote to the employers on his behalf, the letter of that date. There is also the letter of November 1. I decline to take the letters as an admission that the workman knew at that time that his injury was due to the accident. The case comes within the principle of the decision in Hoare v. Arding & Hobbs (1912), 5 B. W. C. C. 36, and there is no ground for saying that the workman has lost his right to compensation, through not giving notice until January. The learned County Court Judge was quite right in his finding that the notice was given as soon as practicable, and the defence of want of notice fails.''

In the same case, BANKS, L. J., says:

''I deal with the case on the footing that the real notice is that of January 5, 1917, and the question is whether there was any evidence that there was reasonable cause for the delay in giving the notice. One of the matters to be taken into consideration is the state of knowledge of the person on whom it is incumbent to give the notice. The person who must give the notice must know that he has met with an accident. The explanation of refraining from giving notice here is that, till the new doctor came, the workman did not realize that he had met with an accident which would entitle him to claim compensation. It was quite open to the County Court Judge to find as he did.''

The Supreme Court of Missouri had the question before it in State ex rel. Buttiger v. Haid et al., 330 Mo. 1030, 51 S. W. (2d) 1008. In that case, on December 20, 1928, the lid of a box fell on the employee's toe. No serious results immediately appeared. There was no break in the skin, and there was no discoloration. The employee continued to work without any serious inconvenience until February 20, 1929, when his toe began to hurt. He did not, however, stop work until Saturday, March 2d. On March 4th his wife reported that he was unable to work. The foot was badly swollen around the ankle,

and he could not get his shoe on. About the middle of March the employer learned the full details of the accident, and on March 18th reported it to the commission. On April 2d, the toe was amputated. Later gangrene set in, which required the amputation of the left leg on April 23rd. The employee died of. gangrene on May 10th. The commission made a general finding in favor of the claimant. Upon appeal, this court held that the finding was not sufficient to support the award, because there was no specific finding that there was good cause shown for failure to give notice within thirty days of the accident, or that the employer was not prejudiced by failure to receive such notice. On *certiorari*, the Supreme Court quashed this opinion, and held that the evidence showed as a matter of law that there was good cause shown for failure to give notice within thirty days. The court said:

"The Court of Appeals in the opinion states as a conclusion from the evidence: 'We would be unable to rule as a matter of law that there was no good cause shown for the failure to give such notice and that the employer was not prejudiced by the failure to receive such notice.' On the contrary, the evidence seems conclusive that there was good cause for failure to give such notice in thirty days after the. accident. It was two full months, February 20, 1929, after the accident, December 20, 1928, before the injury was apparent. Then for the first time Buttiger and his family discovered that it was serious. The employer's physician, expert, diagnosed it as a case of osteomyelitis, and testified that the progress of the disease was slow, without pain or noticeable symptoms for at least two months. The proof was undisputed. How then could a notice of the accident which caused the injury be given before the injury appeared?''

Other cases to like effect are: Texas Employers' Ins. Ass'n v. Mummey (Tex. Civ. App.), 200 S. W. 251; Kenmont Coal Co. v. Martin, 227 Ky. 217, 12 S. W. (2d) 314; Duffy v. Brookline, 226 Mass. 131, 115 N. E. 248; McGuire v. Phelan-Shirley Co., 111 Neb. 609, 197 N. W. 615; Maryland Cas. Co. v. Robinson, 149 Va. 307, 141 S. E. 225; Bergerons' Case, 243 Mass. 366, 137 N. E. 739; Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Mills v. Dinnington Main Coal Co., Ltd., 10 B. W. C. C. 153; Brooks v. West Leigh Colliery Co., Ltd., 26 B. W. C. C. 130; Fenton v. Owners of S. S. Kelvin, 1925, 2 K. B. 473, 18 B. W. C. C. 328; Hayward v. West Leigh Colliery Co., Ltd., 1915 A. C. 540, 8 B. W. C. C. 384; Walters v. Wall & Sons, Ltd., 10 B. W. C. C. 667; Hoare v. Arding & Hobs, 1912, 5 B. W. C. C. 36.

As to the failure of respondent herself to give notice under the statute within the thirty days, all that need be said is that prior to the death of her husband she had no claim and no duty to perform with respect to notice. After the death, it is true, she did not give notice as soon as practicable, but no point has ever been made of that by the appellants, either here or at the hearing before the commission.

It was not suggested by appellants, either in their answer below, or in their brief here, that had immediate notice been given by respondent, the appellants would have been able to procure evidence as to the circumstances under which the accident happened beyond that produced by them at the hearing before the commission. Their only claim, both before the commission and in this court, was that they were prejudiced because if they had been notified immediately upon the happening of the accident, they could have saved Reeves' life by giving him antitetanus serum.

We believe the commission correctly held that no prejudice resulted from the failure of appellants to receive written notice of the accident within thirty days.

The final assignment of error is that the commission acted in excess of its powers in allowing medical and hospital expenditures, as the evidence shows that those expenditures were contracted for without appellants' knowledge, and that no demand for medical aid was ever made upon appellants.

The evidence does show that prior to Reeves' death appellants were unaware that he had suffered a compensable injury and that no demand was made upon them for medical aid. However, the record also shows that Reeves was unaware that he had suffered a compensable injury.

By Section 3701, Revised Statutes Missouri, 1939 (Mo. R. S. A., sec. 3701), it is provided that the employer shall furnish to the employee "such medical, surgical, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required for the first ninety days after the injury or disability, . . . not exceeding in amount of sum of seven hundred and fifty dollars, and thereafter such additional similar treatment as the commission by special order may determine to be necessary." It is also provided that "If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense."

Section 3709, Revised Statutes Missouri, 1939 (Mo. R. S. A., sec. 3709), provides that if the injury causes death, "the employer shall pay direct to the persons furnishing the same the reasonable expense of the burial of the deceased employee not exceeding one hundred and fifty dollars, and, if not covered by the provisions of section 3701, the reasonable expense of his last sickness not exceeding two hundred and fifty dollars."

In this case the medical and hospital expense incurred within the first ninety days was covered under the provisions of Section 3701, so that any limitation upon the right of recovery imposed by that section is applicable to the case at bar.

Under the decisions construing Section 3701, we find several situations in which an employee will be denied recovery. Obviously, where an employee after receiving an injury which he knows is compensable refuses medical attention offered by an employer, and selects his own

physician, he cannot recover under Section 3701 for those services. [Moorman v. Central Theatres Corp. (Mo. App.), 98 S. W. (2d) 987.] Also, where an employer has no notice of such an injury to the workman, nor opportunity to furnish medical aid for him, the employer is not liable for the medical aid furnished. [Schutz v. Great American Ins. Co., 231 Mo. App. 640, 103 S. W. (2d) 904; Aldridge v. Reavis (Mo. App.), 88 S. W. (2d) 265.]

To be relieved of medical aid, which the statute expressly provides, the employer must necessarily show a state of facts which under the statute exempt him from liability for such aid. Under the statute, he can only be exempted where there is an election by an employee to select his own physician at his own expense. While this principle is not clearly stated in the opinions just cited, the underlying theory of the cases must have been that the insured, by refusing medical aid tendered, or by failing to notify the employer of the accident when he himself knew that he had suffered a compensable injury, by selecting a physician of his own choice, had exercised the right provided in said section.

In the case at bar there was no evidence of such election. The employee, when he sought medical aid, did not know that he had suffered a compensable injury, and since election must be based upon knowledge, there is no basis for holding that recovery for medical and hospital services cannot be had.

We find no error in the record. The judgment is affirmed.

*Hughes, P. J.,* and *McCullen, J.,* concur.

## ON MOTION FOR REHEARING.

ANDERSON, J.—In their motion for rehearing, appellants complain that in holding that Reeves, as a matter of law, was under no duty to serve written notice of injury prior to his death, we have substituted our finding of fact for the finding of the Commission. They further say that the Commission found as a fact that the employee did not give notice of the injury as soon as practicable.

The Commission found:

"We further find that the employer had actual notice of such accident within 30 days thereafter, and although notice thereof was not given to employer as soon as practicable after said accident, the employer was not prejudiced by its failure to receive such notice at an earlier date."

No written notice was served at any time upon the employer as required by the statute, so that the Commission was compelled to find that written notice was not given as soon as practicable.

In affirming the award of the Commission we, of course, had to first find from the evidence when and by whom said written notice should have been given, for until that preliminary question was decided, we could not have determined the question which appellants

contend we overlooked, namely, "whether or not there is sufficient evidence in the record to support the finding that the employer was not prejudiced by reason of the failure to report." We held that because of the apparent trivial nature of the injury which the employee suffered, the failure of the employee to serve the written notice before his death could not have been availed of as a defense to the claim; that the practicable time for serving notice did not arrive prior to his death. This, in our opinion, appears as a matter of law, for the evidence adduced by both parties was to the effect that Reeves worked every day from Monday, July 21st, the date of the alleged accident, until Sunday morning, July 27th, during which time he performed his duties in the usual manner, made no complaints whatever of injury, and exhibited no symptoms of injury. The only legitimate inference from this evidence is that if Reeves did sustain an accident, it was not such as called for notice under the statute.

The symptoms of the disease from which Reeves died appeared for the first time on Sunday afternoon, July 27th, and from respondent's evidence, which is not contradicted, Reeves was too ill from that date until the date of his death, August 5th, to attend to his affairs. This evidence is sufficient, prima facie at least, to establish excuse for his failure after July 27th to give the notice, and to shift to the employer the burden of going forward with the evidence to dispute the natural inference arising therefrom. [Schrabauer v. Schneider Engraving Products, Inc., 224 Mo. App. 304; 25 S. W. (2d) 529.]

In our opinion, when the Commission found that written notice was not served as soon as practicable, it must have meant that respondent had failed to comply with the statute, because she had neglected to serve the notice after the death of her husband. However, if appellants' interpretation of the finding is correct, such finding is erroneous, but the judgment should not be disturbed for that reason. Rather, it should be affirmed on the theory that the award was for the right party.

If the Commission meant to imply that Reeves, by failing to give notice after the disease became manifest, had failed to serve the notice as soon as practicable, the judgment must still be affirmed on the theory that there was sufficient evidence to justify the further finding of the Commission that no prejudice resulted from such failure. The symptoms of the disease which caused Reeves' death appeared for the first time on Sunday afteroon, July 27th, and at that time had reached the stage where the giving of antitetanus serum would not have been effective in saving his life. This appears from the testimony of Dr. Olney A. Ambrose, who, testifying for defendants, stated: "Therapeutic doses of antitoxin after the development of the disease are not effective because tetanus bacillus is a very virulent germ. After the condition has been established in the nervous system, antitoxin does not affect it. The outside limit of time antitoxin is effective as a prophylactic is three or four days after the wound. . . . If

a man received a nail wound on July 21st and became ill on July 27th and they starter to use tetanus treatment on the 27th, I do not think the disease could have been controlled. . . . After the spasms have started and the throat symptoms appear, it is too late to administer serum.''

Appellants also complain, in their motion for rehearing, that our opinion in the case at bar is in conflict with Conn v. Chestnut Street Realty Co., 235 Mo. App. 309, 133 S. W. (2d) 1056. In that case the employee, on May 21, 1936, while attempting to raise a window, wrenched her arm between the elbow and wrist. A day or two later a swelling appeared, but disappeared in a few days, when a lump developed, about the size of a marble, which lump grew until January 7, 1937, when it was about the size of an orange. On the latter date, the employee was examined by her physician, who told her that the swelling was a tumor and she ought to have it removed. On July 21, 1937, pain developed in her arm, and she went to the hospital to have the tumor removed. The doctor found the swelling to be a sarcoma, and amputated the arm at the juncture of the middle and upper third of the humerus. On September 8, 1937, claim was filed before the Commission, and after a hearing, the Commission denied the claim on the ground that it was not filed within the time prescribed by Section 3337, Revised Statutes Missouri, 1929 (Mo. St. Ann., sec. 3337, p. 8269). The circuit court affirmed. Upon appeal to this court, claimant contended that since she worked until July 21, 1937, there was no disability and hence no compensable injury until that date, and since the claim was filed within six months of July 21, 1937, it was timely filed. We rejected this contention, and held that ''a claim must be filed within six months after it becomes reasonably discoverable and apparent that an injury has resulted from the accident'' for which the employee is entitled to benefits under the act, including medical services, and we affirmed the judgment on the theory that the facts in evidence warranted a finding that claimant had sustained such an injury more than six months prior to the filing of the claim.

We believe that the mere recitation of the facts in the Conn case demonstrates the fallacy of appellants' contention. Aside from the fact that a different section of the statute was there involved, it was apparent to the employee shortly after the accident that she had suffered an injury for which she was entitled to benefits under the act, which knowledge was sufficient to start the running of the statute. In the case at bar, it was not apparent to the employee that he had suffered a compensable injury. In fact, it was not until August 4th, the day before Reeves died, that the doctors determined that he was suffering from tetanus. The Conn case is not in conflict with our ruling in the case at bar.

The appellants' motion for rehearing is overruled.

*Hughes, P. J.,* and *McCullen, J.,* concur.